**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **CHALLENGER CRESSON I, LLC**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BILL SANDERS, INDEPENDENT EXECUTOR OF THE ESTATE OF PEARL SMELLEY; CRESSON MOON PROPERTIES, LP; RICHARD DAVID SMELLEY AND AMY ELIZABETH SMELLEY; TAMMY MARIE GRAHAM AND GREGORY SCOTT GRAHAM; AND DEBORAH RUTH DAVIS AND DAVID GLENN DAVIS,**<br><br>**Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Cause No. 4:26-cv-00231-P** |

---

**<u>DEFENDANTS' ORIGINAL ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND JURY DEMAND</u>**

Defendants Bill Sanders, Independent Executor of the Estate of Pearl Smelley (the "Smelley Estate"), Cresson Moon Properties, LP ("CMPLP"), Richard David Smelley and Amy Elizabeth Smelley (collectively, "Smelley"), Tammy Marie Graham and Gregory Scott Graham (collectively, "Graham"), and Deborah Ruth Davis and David Glenn Davis (collectively, "Davis") (the Smelley Estate, CMPLP, Smelley, Graham, and Davis are collectively, "Defendants" or "Seller") file this Original Answer, Affirmative Defenses, Counterclaims, and Jury Demand against Plaintiff Challenger Cresson I, LLC ("Plaintiff" or "Purchaser") pursuant to Federal Rules of Civil Procedure 7, 8, and 12, and state as follows.

# I. ANSWER

## A. General Denial

Pursuant to Rule 8(b) of the Federal Rules of Civil Procedure, Defendants deny each and every allegation in Plaintiff's First Amended Original Complaint except those expressly admitted herein.

## B. Responses to Plaintiff's First Amended Original Complaint

***Parties***

1. Defendants admit that Plaintiff Challenger Cresson I, LLC is a Delaware limited liability company and that the Complaint identifies three members with the residences stated therein. Defendants lack knowledge or information sufficient to form a belief as to the truth of any remaining allegations in Paragraph 1 and therefore deny the same.

2. Defendants admit the allegations in Paragraph 2 regarding the identity of Bill Sanders as Independent Executor of the Estate of Pearl Smelley and he may be found at the address stated therein.

3. Defendants admit that Cresson Moon Properties, LP is a Texas limited partnership and that its registered agent may be found at the address stated therein.

4. Defendants admit the allegations in Paragraph 4 regarding the identities of Richard David Smelley and Amy Elizabeth Smelley and that they reside at the address stated therein.

5. Defendants admit the allegations in Paragraph 5 regarding the identities of Tammy Marie Graham and Gregory Scott Graham and that they reside at the address stated therein.

6. Defendants admit the allegations in Paragraph 6 regarding the identities of Deborah Ruth Davis and David Glenn Davis and that they reside at the address stated therein.

***Jurisdiction and Venue***

7. Defendants admit that this Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

8. Defendants admit that venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). Defendants deny any remaining characterizations in Paragraph 8 to the extent inconsistent with the record.

***Facts***

9. Defendants admit the allegations in Paragraph 9.

10. Defendants state that the Contract speaks for itself, and subject hereto, admit the allegations in Paragraph 10.

11. Defendants state that the Contract speaks for itself and admit that the Contract contains the provisions generally referenced in Paragraph 11. Defendants deny any remaining allegations in Paragraph 11 to the extent they characterize the Contract inconsistently with its express terms.

12. Defendants state that the Contract speaks for itself and admit that Section 6(i) of the Contract contains the provision quoted, among other terms. Defendants deny any characterization inconsistent with the Contract's express terms.

13. Defendants state that the Contract speaks for itself and admit that the Contract contains the provisions generally referenced in Paragraph 13, among other terms. Defendants deny any characterization inconsistent with the Contract's express terms.

14. Defendants state that the Contract speaks for itself and admit that the Contract contains the provisions generally referenced in Paragraph 14, among other terms. Defendants deny any characterization inconsistent with the Contract's express terms.

15. Defendants state that the Contract speaks for itself and admit that Paragraph 8 of the Contract contains the provisions generally referenced in Paragraph 15, among other

terms. Defendants deny any characterization inconsistent with the Contract's express terms or any legal conclusion that may be drawn therefrom.

16. Defendants state that the Contract speaks for itself and admit that Section 5(a) of the Contract contains provisions generally referenced in Paragraph 16, among other terms. Defendants deny any characterization inconsistent with the Contract's express terms.

17. Defendants state that the Contract speaks for itself and admit that Paragraph 13(k) of the Contract contains the provision generally referenced in Paragraph 17, among other terms.

18. Defendants admit the allegation in Paragraph 18 that, following the effective date, Seller delivered Due Diligence Items to Purchaser.

19. Defendants admit the allegation in Paragraph 19 that on or about June 8, 2023, the parties filed a Memorandum of Agreement with the Hood County Clerk and state that the document speaks for itself.

20. Defendants admit the allegation in Paragraph 20.

21. Defendants deny the allegations in Paragraph 21.

22. Defendants admit that on or about December 15, 2023, Purchaser sent the referenced letter to Seller, state that the letter speaks for itself, and deny the remaining allegations.

23. Defendants admit that the parties agreed to reset the 180-day Inspection Period.

24. Defendants admit the allegations in Paragraph 24.

25. Defendants deny the allegations in Paragraph 25.

26. Defendants admit that on or about July 1, 2024, Purchaser delivered the referenced letter to Seller, state that the letter speaks for itself, and deny the remaining allegations.

27. Defendants admit that on or about December 4, 2024 (the "First Amendment Effective Date"), the parties entered into the First Amendment to Standard Contract of Sale ("First Amendment"), and state that the First Amendment speaks for itself.

28. Defendants state that the First Amendment speaks for itself and admit that it contains the provisions generally referenced in Paragraph 28, among other terms. Defendants deny any characterization inconsistent with the First Amendment's express terms or any legal conclusion that may be drawn therefrom.

29. Defendants deny the allegations in Paragraph 29.

30. Defendants deny the allegations in Paragraph 30.

31. Defendants admit that on or about December 31, 2025 (the "Second Amendment Effective Date"), the parties entered into the Second Amendment to Standard Contract of Sale ("Second Amendment"), which, among other things, extended the Outside Closing Date to January 10, 2026 (the "First Extended Closing Date"). The Second Amendment speaks for itself, and Defendants deny any characterization inconsistent with its express terms.

32. Defendants admit the allegations in Paragraph 32.

33. Defendants deny the allegations in Paragraph 33.

34. Defendants deny the allegations in Paragraph 34.

35. Defendants state that the Contract speaks for itself and admit that Paragraph 6(i) of the Contract contains the provisions referenced in Paragraph 35, among other terms. Defendants deny any characterization inconsistent with the Contract's express terms or any legal conclusion that may be drawn therefrom.

36. Defendants state that the referenced ESA speaks for itself and Defendants deny the remaining allegations in Paragraph 36.

37. Defendants deny the allegation in Paragraph 37.

38. The Contract speaks for itself. Defendants deny the allegations in Paragraph 38.

39. Defendants deny the allegation in Paragraph 39.

40. Defendants state that the Contract speaks for itself and admit that Paragraph 7(c) of the Contract contains the provisions generally referenced in Paragraph 40, among other terms. Defendants deny any characterization inconsistent with the Contract's express terms or any legal conclusion that may be drawn therefrom.

41. Defendants deny the allegation in Paragraph 41.

42. Defendants deny the allegations in Paragraph 42.

43. Defendants deny the allegation in Paragraph 43.

44. Defendants state that the Contract speaks for itself and admit that Paragraph 7(c) of the Contract contains the provisions generally referenced in Paragraph 44, among other terms. Defendants deny any characterization inconsistent with the Contract's express terms or any legal conclusion that may be drawn therefrom, and deny the remaining allegations in Paragraph 44.

45. Defendants deny the allegations in Paragraph 45.

46. Defendants deny the allegation in Paragraph 46.

47. Defendants deny the allegations in Paragraph 47.

48. Defendants deny the allegations and characterizations in Paragraph 48.

49. Defendants deny the allegations in Paragraph 49.

50. Defendants state that the Contract speaks for itself and admit that Paragraph 11(b) of the Contract contains the provisions generally quoted in Paragraph 50, among other terms. Defendants deny any characterization inconsistent with the Contract's express terms or any legal conclusion that may be drawn therefrom.

51. Defendants admit that on or about February 12, 2026, Purchaser's counsel sent the email referenced in Paragraph 51, state that the email speaks for itself, and that the email contains the quoted excerpts, among others.

52. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 52 and therefore deny the same.

53. Defendants deny the allegations in Paragraph 53.

54. Defendants state that the email referenced in Paragraph 54 speaks for itself. Defendants deny the remaining allegations in Paragraph 54.

55. Defendants deny the allegations in Paragraph 55.

56. Defendants deny the allegations in Paragraph 56.

57. Defendants deny the allegations in Paragraph 57.

58. Defendants deny the allegations in Paragraph 58.

59. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59 and therefore deny the same.

60. Defendants deny the allegations in Paragraph 60.

61. Defendants deny the allegations in Paragraph 61.

***Count One - Breach of Contract***

62. Defendants are not required to admit or deny the allegations contained in Paragraph 62.

63. Defendants admit the allegation in Paragraph 63.

64. Defendants deny the allegations in Paragraph 64.

65. Defendants deny the allegations in Paragraph 65.

66. Defendants deny the allegations in Paragraph 66.

67. Defendants deny the allegations in Paragraph 67.

68. Defendants admit that Plaintiff seeks the relief described in Paragraph 68 but denies Plaintiff is entitled to the same.

69. Paragraph 69 contains legal conclusions to which no response is required. To the extent further response is required, Defendants deny the remaining allegations in Paragraph 69.

70. Defendants admit that the Property consists of approximately 1,674 contiguous acres located near 7700 Old Granbury Road in Hood County, Texas, with the physical characteristics generally described in Paragraph 70.

71. Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 71 and therefore deny the same.

72. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 72 and therefore deny the same.

73. Defendants deny the allegations in Paragraph 73.

74. Defendants deny that Plaintiff is entitled to the relief requested in Paragraph 74.

***Count Two - Declaratory Judgment Action***

75. Defendants are not required to admit or deny the allegations contained in Paragraph 75.

76. Defendants admit that Plaintiff seeks the relief described in Paragraph 76 but denies Plaintiff is entitled to the same.

77. Paragraph 77 contains legal conclusions to which no response is required. To the extent further response is required, Defendants deny the remaining allegations in Paragraph 77.

78. Paragraph 78 contains legal conclusions to which no response is required. To the extent further response is required, Defendants deny the remaining allegations in Paragraph 78.

79. Defendants admit that Seller contends the January 26 ESA complies with the Contract and that Seller is entitled to proceed toward Closing. Defendants deny that Seller has expressed any intent to rescind the Contract.

80. Defendants admit that Purchaser has stated it disputes the contention referenced in Paragraph 79.

81. Defendants state that the Contract speaks for itself and admit that Paragraph 7(c) of the Contract contains the provisions generally referenced in Paragraph 81, among other terms. Defendants deny any characterization inconsistent with the Contract's express terms or any legal conclusion that may be drawn therefrom.

82. Defendants state that the Contract speaks for itself and admit that Paragraph 7(c) of the Contract contains the provisions generally referenced in Paragraph 82, among other terms. Defendants deny any characterization inconsistent with the Contract's express terms or any legal conclusion that may be drawn therefrom.

83. Defendants deny the allegations in Paragraph 83.

84. Defendants deny the allegations in Paragraph 84.

85. Paragraph 85 contains legal conclusions to which no response is required. To the extent further response is required, Defendants deny the remaining allegations in Paragraph 85.

86. Defendants admit that Plaintiff seeks the relief described in Paragraph 86 but deny that Plaintiff is entitled to the same.

***Attorneys' Fees***

87. Defendants deny the allegations in Paragraph 87 and deny that Plaintiff is entitled to recover attorneys' fees.

***Conditions Precedent***

88. Defendants deny the allegation in Paragraph 88 that Plaintiff has satisfied all conditions precedent to the recovery sought herein.

***Relief Requested***

89. In response to the unnumbered Relief Requested paragraph, Defendants deny that Plaintiff is entitled to any of the relief it requests in its Complaint.

## II. AFFIRMATIVE DEFENSES

Without assuming any burden of proof, persuasion, production, or otherwise not applicable to Defendants, Defendants assert the following affirmative and other defenses to Plaintiff's Complaint:

1. Plaintiff's Complaint fails to state a claim for which relief can be granted.

2. Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to perform its obligations under the Contract, while Defendants performed, tendered performance, were ready to perform, or were excused from further performance by Plaintiff's own conduct.

3. Plaintiff's claims are barred, in whole or in part, by Plaintiff's own prior material breach or breaches.

4. Plaintiff's claims are barred because Plaintiff has repudiated the agreement or engaged in conduct constituting anticipatory breach.

5. Plaintiff failed to satisfy all conditions precedent to the relief it seeks, including the requirement that it be ready, willing, and able to perform its own obligations.

6. Plaintiff's claims are barred by the doctrines of unclean hands, laches, and estoppel.

7. Plaintiff waived, in whole or in part, the claims and remedies it now asserts through its own conduct, delay, and course of performance.

8. Plaintiff is not entitled to the equitable relief it seeks, including specific performance, because such relief is barred by Plaintiff's own inequitable conduct.

9. Plaintiff's remedies, if any, are barred or limited by the Contract's express remedial provisions.

10. Plaintiff has suffered no damages and/or failed to mitigate its alleged damages.

11. Any recovery by Plaintiff must be reduced by offsets, credits, setoffs, earnest money, or other amounts to which Defendants are entitled.

12. Plaintiff is not entitled to specific performance because Plaintiff was not ready, willing, and able to perform under the Contract's agreed terms and because Plaintiff has or had an adequate remedy at law.

13. Defendants deny all allegations in the Complaint to the extent not expressly admitted. Defendants reserve the right to amend this Answer and assert additional defenses as discovery in this action proceeds in accordance with the Federal Rules of Civil Procedure.

## III. <u>COUNTERCLAIMS</u>

***Parties and Jurisdiction***

1. Counter-Plaintiffs are the Defendants in this action: Bill Sanders, Independent Executor of the Estate of Pearl Smelley, Cresson Moon Properties, LP, Richard David Smelley, Amy Elizabeth Smelley, Tammy Marie Graham, Gregory Scott Graham, Deborah Ruth Davis, and David Glenn Davis.

2. Counter-Defendant is Plaintiff Challenger Cresson I, LLC.

3. This Court has jurisdiction over these counterclaims because they arise out of the same transaction or occurrence as Plaintiff's claims and fall within the Court's jurisdiction.

4. Venue is proper in this District.

5. This matter has a factual nexus to the Fort Worth Division.

***Factual Allegations***

6. The parties entered into the Contract for the purchase and sale of approximately 1,674 acres of property near 7700 Old Granbury Road, Cresson, Texas, (the "Property") for an approximate purchase price of $32,643,000.00 on May 26, 2023 ("Effective Date").

7. Pursuant to Section 5(a) of the Contract, Purchaser received an inspection period ("Inspection Period") to inspect the Property. The Inspection Period commenced on the Effective Date.

8. Per the Contract, the Inspection Period was to continue for one-hundred eighty (180) days after the date Seller notified Plaintiff that all of the tires on the property were removed and delivered to Plaintiff the Due Diligence Items.

9. Seller effected timely delivery of the Due Diligence Items.

10. On June 21, 2023, Seller notified Plaintiff that the tires were removed from the property, starting the Inspection Period, which was to expire December 18, 2023.

11. After expiration of more than 98% of the Inspection Period, Plaintiff sent a letter to Seller that claimed to have found more tires on the Property and insisted the Inspection Period start over.

12. In good faith, Seller once again made sure every tire was removed from the nearly three square miles that constitute the Property, notified Plaintiff on January 11, 2024 that all had been removed, and requested a new critical dates letter.

13. With notification of tire removal, Seller anticipated expiration of the Inspection Period on July 9, 2024.

14. On July 1, 2024, just 8 days before expiration of the Inspection Period and in a patent and shameless effort to simply delay Closing once again, Plaintiff sent Seller a letter that claimed to have found more tires. As evidence, Plaintiff attached a photo of a fragment of a

tire obstructed by grass and a photo of a tire mounted on a boat trailer in use and parked—with permission—on a temporary basis on the Property.

15. On December 4, 2024, the parties entered into the First Amendment, extending the inspection period through April 7, 2025 and setting an outside closing date of December 31, 2025.

16. On December 31, 2025, the parties entered into the Second Amendment extending the closing date to January 10, 2026.

17. From December 15, 2025 to January 26, 2026, Seller made no less than five written attempts to establish a closing date with Purchaser; each was declined.

18. Seller delivered that certain Limited Phase II Investigation prepared by Whitehead Environmental Solutions, LLC ("Whitehead") (the "ESA") on January 26, 2026. The ESA concluded that there was no evidence of any environmental impact to the site and that no further investigation was warranted.

19. In January and early February 2026, Plaintiff's counsel made repeated assurances Plaintiff was ready to close, stating that "one more short extension should allow everybody to get the ducks in a row and get this puppy solidified and headed towards closing" and that Plaintiff was ready to "paper up one last amendment and move toward closing without more amendments".

20. By February 12, 2026, despite its reassurances to Seller, Plaintiff changed tactics and sought to delay Closing once again. Plaintiff's counsel stated it would be "premature to discuss a closing date" until environmental matters were fully and clearly resolved and expressly demanded new conditions, including: (a) an express right for Purchaser to rely on the ESA report; (b) additional-insured status on the environmental engineer's and drilling contractor's policies; (c) policy limits "appropriate for a $33 million transaction"; (d)

occurrence-based rather than claims-made policies; and (e) future-surviving insurance obligations.

21. Plaintiff also refused to accept the ESA and instead hired environmental counsel who sought to refute its findings.

22. Plaintiff's extra-contractual demands were not required by the Contract as conditions precedent to Purchaser's duty to close. The Contract requires Seller to provide a report prepared by a licensed environmental engineer confirming that no environmental contamination exists on or with respect to the Property, but does not require Seller to provide reliance letters, additional-insured status, specific insurance policy types, or future-surviving insurance obligations as conditions precedent to Closing.

23. By refusing to proceed to closing unless Seller first satisfied those additional demands, Plaintiff failed to comply with the Contract and instead imposed new and extra-contractual conditions.

24. Plaintiff's demonstrated bad faith and course of conduct included repeatedly identifying alleged tire issues at or near the expiration of applicable contractual deadlines—each time during the final week of the Inspection Period—despite having been aware of such issues for extended periods, thereby strategically resetting the Inspection Period and intentionally delaying the closing of the transaction for as long as possible. By its conduct, Plaintiff has made clear it is wholly incapable of performing its obligations under the Contract and has repudiated the same.

25. Plaintiff's conduct prevented, delayed, and/or excused closing and constituted breach, anticipatory breach, and/or repudiation.

26. As a direct and proximate result of Plaintiff's intentional bad-faith conduct constituting breach, repudiation, and prevention of performance of the Contract, Defendants have suffered actual damages, including: (a) the difference between the contract price and the

Property's fair market value at the relevant breach date; (b) carrying costs, including taxes, insurance, maintenance, security, financing-related expenses, and other holding costs; (c) additional marketing, brokerage, diligence, legal, and transaction expenses; (d) prejudgment and post-judgment interest; and (e) attorneys' fees and costs to the extent recoverable.

27. Defendants presently allege loss-of-sale damages, carrying costs, delay damages, transaction expenses, interest, and recoverable fees. In the alternative, Defendants seek retention of all Earnest Money deposited by Purchaser as liquidated damages under Section 11(a), together with all other rights and remedies preserved by the surviving-obligations carve-out therein.

28. In the further alternative, to the extent Section 11(a) is held to limit Seller's remedies for Purchaser's default, Defendants are entitled to retain the full amount of Earnest Money deposited by Purchaser as liquidated damages, along with any other relief provided by the Contract.

***Count One — Breach of Contract***

29. Defendants incorporate the preceding counterclaim paragraphs.

30. A valid and enforceable contract exists between Defendants and Plaintiff.

31. Defendants performed, tendered performance, were ready to perform, or were excused from further performance by Plaintiff's own conduct.

32. Plaintiff materially breached the Contract by one or more of the following: (a) failing to close in accordance with the Contract's agreed terms; (b) failing to remain ready, willing, and able to perform; (c) conditioning closing on new and extra-contractual demands; (d) preventing or hindering consummation of the sale; and/or (e) otherwise defaulting under the agreement.

33. Plaintiff's breach was material because it defeated the central purpose of the transaction: the sale of the Property at the contract price.

34. As a result of Plaintiff's breach of the Contract, Defendants have suffered actual damages.

***Count Two — Anticipatory Repudiation***

35. Defendants incorporate the preceding counterclaim paragraphs.

36. Plaintiff has delayed closing indefinitely.

37. Plaintiff refuses to proceed unless Defendants meet Plaintiff's extra-contractual demands.

38. Plaintiff has engaged in a pattern of strategic delay to reset and postpone the Inspection Period and closing.

39. Plaintiff has intentionally created additional hurdles for Defendants to overcome.

40. By each, Plaintiff has absolutely and unequivocally refused to perform its obligation under the Contract.

41. Plaintiff's refusal to perform is without justification.

42. Plaintiff's anticipatory repudiation has caused Defendants actual damages.

***Count Three — Declaratory Judgement***

43. Defendants incorporate the preceding counterclaim paragraphs.

44. An actual and justiciable controversy exists between the parties regarding their rights and obligations under the Contract and amendments.

45. Defendants seek declarations that: (a) Defendants have satisfied their obligations under the Contract including any and all conditions precedent to closing set forth in Paragraph 8 of the Contract; (b) Plaintiff is not entitled to impose extra-contractual conditions to closing; (c) Plaintiff has failed to comply with the Contract by failing and refusing to close in the time required by the Contract; and (d) Plaintiff's conduct constitutes breach, anticipatory breach, repudiation, and/or default.

46. Finally, Defendants further seek declarations that: (e) Plaintiff's remedies, if any, are limited by the Contract's express terms, including Section 11(b); and (f) Defendants are entitled to pursue their own contractual remedies and damages resulting from Plaintiff's breach and/or repudiation.

***Attorneys' Fees, Interest, and Costs***

47. Defendants incorporate the preceding counterclaim paragraphs.

48. Defendants seek all attorneys' fees, expenses, taxable costs, prejudgment interest, and post-judgment interest recoverable under the Contract, TEX. CIV. PRAC. & REM. CODE §§ 37.001 and 38.001 *et seq.*

49. Conditions precedent have been satisfied or waived by Purchaser's conduct.

## IV. JURY DEMAND

1. Defendants demand a trial by jury on all issues triable to a jury.

## V. PRAYER

WHEREFORE, Defendants respectfully request that Plaintiff take nothing by way of its claims and that the Court render judgment as follows:

a) that Plaintiff take nothing on all claims asserted in the Complaint;

b) actual damages in an amount to be proven at trial, including loss-of-sale damages, carrying costs, delay damages, and transaction expenses;

c) declaratory relief as requested above;

d) prejudgment and post-judgment interest at the maximum rate allowed by law;

e) attorneys' fees, costs, and expenses to the fullest extent recoverable under the Contract and applicable law; and

f) all other relief, at law or in equity, to which Defendants may be justly entitled.

Dated: April 9, 2026

Respectfully submitted,

By: */s/ Scott A. Wheatley*
Scott A. Wheatley
State Bar No. 24013737
swheatley@jw.com
Lee B. Hunt
State Bar No. 24082257
lhunt@jw.com
Trevor J. Paul
State Bar No. 24133388
tpaul@jw.com

JACKSON WALKER LLP
777 Main Street, Suite 2100
Fort Worth, Texas 76102
Phone: 817.334.7200
Fax: 817.334.7290

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record via the Court's electronic filing service provider on April 9, 2026.

*/s/ Scott A. Wheatley*
SCOTT A. WHEATLEY