In the United States District Court
for the Northern District of Texas
Fort Worth Division

| | | |
|---|---|---|
| Challenger Cresson I, LLC, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 4:26-CV-00231-P |
| | § | |
| Bill Sanders, et al., | § | |
| | § | |
| Defendants. | § | |

**Declaration of Blake J. Brownshadel**

I, Blake J. Brownshadel, declare as follows:

1. I am an attorney who represented Plaintiff Challenger Cresson I, LLC ("Challenger") in this action during the period in which Challenger propounded its initial written discovery. I had primary responsibility for directing and managing that discovery on Challenger's behalf.

2. I make this declaration based on my personal knowledge of the litigation and Challenger's discovery efforts. If called to testify, I could and would testify competently to the matters stated here.

3. The Court's Scheduling Order set October 9, 2026 as the deadline for completion of discovery.

4. Challenger began pursuing merits discovery well in advance of that deadline. On July 14, 2026, nearly three months before the discovery cutoff, Challenger served a substantial first round of written discovery directed to the issues then presented by the pleadings.

5. That discovery included Plaintiff's First Set of Requests for Production to Defendants, Plaintiff's First Set of Requests for Admission to Defendants, and separate interrogatories directed to Defendant Bill Sanders, Cresson Moon Properties, LP, and the individual Defendants.

6. True and correct copies of those discovery requests are attached as Exhibits A through E.

7. The July 14 discovery was broad and substantive. Among other subjects, it sought information and documents concerning the negotiation and performance of the parties' real-estate contract; Defendants' delivery of due-diligence materials; environmental conditions, investigation, and remediation concerning the Property; removal of tires from the Property; mineral-estate issues; communications concerning contractual performance; insurance; the parties' readiness and ability to close; groundwater wells; and hazardous substances affecting the Property.

8. Challenger served that discovery to develop the principal factual issues then presented by the parties' claims and counterclaims. It was not intended as preliminary or placeholder discovery.

9. Defendants later served responses to Challenger's written discovery. Challenger reviewed those responses and the associated document production as part of its continuing case preparation.

10. Following that written discovery, substantial additional discovery remained appropriate. In particular, Challenger anticipated taking fact depositions concerning the parties' performance of the Contract, the environmental and due-diligence issues, and the other subjects addressed in the written discovery.

11. Challenger also anticipated targeted follow-up discovery based on matters identified or clarified through the written responses, document production, and depositions. The principal remaining work was therefore the ordinary next stage of discovery following a substantial first round of written discovery, rather than an effort to begin discovery for the first time near the deadline.

12. Challenger's July discovery could not, however, address factual developments that had not yet occurred. In August 2026, after that written discovery had already been served, additional events arose concerning groundwater permitting and development of the Property.

13. Those later events created factual subjects that were not part of the record when Challenger formulated and served its July 14 discovery. They therefore created a need for additional targeted discovery beyond the discovery Challenger had already undertaken.

14. Challenger responded promptly to those developments. Among other steps, Challenger retained additional lead litigation counsel to augment the existing team and increase the resources devoted to developing the newly expanded factual and legal record. New lead counsel appeared on August 31, 2026, shortly after the August developments arose.

15. The addition of lead counsel was not undertaken to justify delay. It was part of Challenger's effort to move the case forward diligently and to ensure that sufficient attorney resources were available to address the newly emerging issues while continuing the discovery already underway.

16. Based on my involvement in Challenger's discovery efforts, Challenger had been actively developing the factual record before those new events arose and increased its litigation resources promptly afterward. The additional time now requested is not sought to cure a failure to initiate discovery. It would permit Challenger to complete the depositions and follow-up discovery that ordinarily remained after its July written discovery and to address factual developments that occurred afterward.

17. Challenger requests that the discovery deadline be extended to January 8, 2027. I understand that Challenger is not requesting any change to the dispositive-motion deadline, trial setting, or other deadlines in the Scheduling Order.

I declare under penalty of perjury that the foregoing is true and correct.

Signed by:
Blake Brownshadel
976C12BAA1394E3...

September 21, 2026

**2026-09-21**

**Declaration of Blake Brownshadel**

**Exhibit A**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **CHALLENGER CRESSON I, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:26-CV-00231-P** |
| | § | |
| **BILL SANDERS, INDEPENDENT EXECUTOR OF THE ESTATE OF PEARL SMELLEY; CRESSON MOON PROPERTIES, LP; RICHARD DAVID SMELLEY AND AMY ELIZABETH SMELLEY; TAMMY MARIE GRAHAM AND GREGORY SCOTT GRAHAM; AND DEBORAH RUTH DAVIS AND DAVID GLENN DAVIS,** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANTS**

TO: Defendants Bill Sanders, Independent Executor of the Estate of Pearl Smelley; Cresson Moon Properties, LP; Richard David Smelley and Amy Elizabeth Smelley; Tammy Marie Graham and Gregory Scott Graham; and Deborah Ruth Davis and David Glenn Davis, by and through their attorneys of record, Jackson Walker LLP, 777 Main Street, Suite 2100, Fort Worth, Texas 76102.

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Plaintiff Challenger Cresson I, LLC ("Plaintiff" or "Purchaser") requests that Defendants admit, for purposes of this action only, the truth of the following matters within thirty (30) days of service of these Requests.

**DEFINITIONS**

1. "Contract" means the Standard Contract of Sale dated effective May 26, 2023, by and between Defendants (as Seller) and Challenger Realty Group, LLC (as Purchaser), together with all exhibits, schedules, appendices, and addenda thereto.

2. "First Amendment" means the First Amendment to Standard Contract of Sale effective December 4, 2024.

3. "Second Amendment" means the Second Amendment to Standard Contract of Sale effective December 31, 2025.

4. "Property" means that certain approximately 1,674 gross contiguous acres of land with an address of 7700 Old Granbury Road, Cresson, Texas, situated in Hood County, Texas, as more particularly described in the Contract.

5. "January 26 Phase II ESA Report" means the Limited Phase II Investigation report prepared by Whitehead and delivered to Purchaser on or about January 26, 2026.

6. "Memorandum of Agreement" or "MOA" means the Memorandum of Agreement filed on or about June 8, 2023, with the Hood County Clerk.

7. "Seller" or "Defendants" means Bill Sanders, Independent Executor of the Estate of Pearl Smelley; Cresson Moon Properties, LP; Richard David Smelley and Amy Elizabeth Smelley; Tammy Marie Graham and Gregory Scott Graham; and Deborah Ruth Davis and David Glenn Davis, individually and collectively.

8. "Purchaser" or "Plaintiff" means Challenger Cresson I, LLC, and its predecessors-in-interest, including Challenger Realty Group, LLC.

9. "Document" has the broadest meaning permitted under Rule 34 of the Federal Rules of Civil Procedure and includes electronically stored information ("ESI").

10. "Communication" means any contact or act by which information or knowledge is transmitted or conveyed between two or more persons, including but not limited to written correspondence, electronic mail, text messages, telephone calls, recordings, and oral conversations.

11. "Whitehead" means Whitehead Environmental Solutions, LLC.

## INSTRUCTIONS

1. These Requests for Admission are propounded pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure. Responses are due within thirty (30) days of service.

2. If You cannot admit or deny a Request in its entirety, please admit or deny that portion that is true and qualify Your response.

3. If You claim lack of information or knowledge as a ground for failure to admit or deny, please state that You have made reasonable inquiry and that the information known or readily obtainable by You is insufficient to enable You to admit or deny.

4. A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:** Admit that on or about May 26, 2023, Seller and Purchaser's predecessor-in-interest, Challenger Realty Group, LLC, executed the Standard Contract of Sale for the Property.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 2:** Admit that the Contract provides for the purchase and sale of the Property for approximately $32,643,000.00.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 3:** Admit that the Memorandum of Agreement attached as Exhibit 2 to Plaintiff's First Amended Complaint is a true and correct copy of the Memorandum of Agreement filed with the Hood County Clerk on or about June 8, 2023.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 4:** Admit that the Contract provides that "time is of the essence" with respect to all provisions therein, pursuant to Section 13(k) of the Contract.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 5:** Admit that on or about December 4, 2024, the parties executed the First Amendment to Standard Contract of Sale.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 6:** Admit that the First Amendment extended the Inspection Period through April 7, 2025, and established an Outside Closing Date of December 31, 2025.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 7:** Admit that on or about December 31, 2025, the parties executed the Second Amendment to Standard Contract of Sale, which extended the Outside Closing Date to January 10, 2026.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 8:** Admit that Section 4(a) of the Contract obligates Seller to deliver Due Diligence Items to Purchaser within ten (10) days of the Effective Date.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 9:** Admit that the Inspection Period under the Contract would commence on the Effective Date and continue through the 180th day after the later to occur of (a) the date upon which all of the Tires had been removed from the Property and Seller had notified Purchaser thereof, and (b) the date upon which Seller had delivered all of the Due Diligence Items to Purchaser.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 10:** Admit that pursuant to Section 1(a) of the Contract, the Property consists of approximately 1,674 gross contiguous acres situated in the extraterritorial jurisdiction of the City of Cresson, Hood County, Texas.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 11:** Admit that pursuant to Section 1(a) of the Contract, the Property to be conveyed includes a 100% undivided interest in the Mineral Estate.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 12:** Admit that Section 6(e) of the Contract represents and warrants that 100% of the Mineral Estate is owned by Seller.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 13:** Admit that under Section 6(e) of the Contract, Seller agreed to convey to Purchaser an undivided interest in 100% of the Mineral Estate at Closing.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 14:** Admit that the Property is subject to one or more oil and gas leases, including the Smelley 1H Lease (RRC Lease ID No. 211620).

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 15:** Admit that Section 4(b) of the First Amendment requires Seller to provide evidence of shut-in payments within five (5) business days following the First Amendment Effective Date.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 16:** Admit that Seller did not provide evidence of shut-in payments within the timeframe required by Section 4(b) of the First Amendment.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 17:** Admit that Section 4(c) of the First Amendment required Seller to deliver a written request to the O&G Lessee under the Smelley 1H Lease to deliver to Seller a full accounting of all shut-in payments made under the Smelley 1H Lease within five (5) business days after the First Amendment Effective Date.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 18:** Admit that Section 4(a) of the First Amendment authorizes Purchaser to contact and communicate with each O&G Lessee on Seller's behalf to negotiate modifications of the O&G Leases.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 19:** Admit that Section 4(a) of the First Amendment obligates Seller to initiate and diligently pursue litigation to modify or terminate the O&G Lease within thirty (30) days following delivery of Purchaser's written request.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 20:** Admit that Section 4(d) of the First Amendment provides that Seller will not accept, deposit, or cash any shut-in consideration in any form on or after the First Amendment Effective Date in connection with any O&G Lease.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 21:** Admit that Section 5(e) of the Contract obligates Seller to cooperate with Purchaser, using Seller's good faith and best efforts, to obtain the Entitlements, Easements Benefitting the Property, and the Required Utilities.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 22:** Admit that Section 5(e) of the Contract requires Seller to execute any and all reasonable or necessary documents in connection with Purchaser's efforts to obtain the Entitlements, Easements Benefitting the Property, and the Required Utilities within three (3) business days following Purchaser's delivery of such documentation to Seller.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 23:** Admit that Section 5(e) of the Contract provides that Seller shall not encumber the Property or enter into any agreement that affects the Property without Purchaser's prior written approval.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 24:** Admit that Section 5(b) of the Contract obligates Seller to cooperate with Purchaser in connection with Purchaser's efforts to negotiate the terms and conditions of the City Development Agreement.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 25:** Admit that Section 5(c) of the Contract obligates Seller to cooperate with Purchaser reasonably and in good faith in Purchaser's efforts to obtain the Zoning Approval.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 26:** Admit that Section 5(d) of the Contract obligates Seller to cooperate reasonably and in good faith with Purchaser in connection with Purchaser's efforts to obtain the Preliminary Plat Approval.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 27:** Admit that under the Contract, the "Intended Use" of the Property is defined as a master planned industrial complex served by rail.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 28:** Admit that Section 7(c) of the Contract obligates Seller to remove all environmental contamination, hazardous materials, and aboveground and underground storage tanks from the Property not less than fifteen (15) days before Closing.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 29:** Admit that Section 7(c) of the Contract requires Seller to deliver to Purchaser an environmental report prepared by a licensed environmental engineer, reasonably approved by Purchaser, confirming that no environmental contamination exists on or with respect to the Property.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 30:** Admit that the January 26 Phase II ESA Report was prepared by Whitehead and delivered to Purchaser on or about January 26, 2026.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 31:** Admit that Seller did not obtain Purchaser's reasonable approval of Whitehead as the licensed environmental engineer prior to retaining Whitehead Environmental Solutions, LLC.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 32:** Admit that the January 26 Phase II ESA Report confirms the presence of Hazardous Substances on, under, or about the Property.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 33:** Admit that the January 26 Phase II ESA Report contains a disclaimer of third-party reliance.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 34:** Admit that as of December 16, 2025 (fifteen days before the Outside Closing Date of December 31, 2025), Seller had not removed all environmental contamination from the Property and had not provided the environmental engineer's report required by Section 7(c) of the Contract.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 35:** Admit that the environmental testing conducted for the January 26 Phase II ESA Report consisted of approximately six (6) soil samples across the approximately 1,674-acre Property and did not include groundwater testing.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 36:** Admit that Seller did not retain an environmental engineer to conduct environmental assessments on the Property until approximately fifteen (15) days before the Outside Closing Date of December 31, 2025.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 37:** Admit that the January 26 Phase II ESA Report was delivered sixteen (16) days after the extended Outside Closing Date of January 10, 2026.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 38:** Admit that the January 26 Phase II ESA Report does not confirm that no environmental contamination exists on or with respect to the Property.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 39:** Admit that Purchaser has not approved or agreed to rely upon the January 26 Phase II ESA Report as the environmental report required by Section 7(c) of the Contract.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 40:** Admit that as of January 10, 2026, Seller had not removed all environmental contamination, hazardous materials, and aboveground and underground storage s from the Property as required by Section 7(c) of the Contract.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 41:** Admit that Section 7(d) of the Contract required Seller to remove all Tires from the Property within thirty (30) days after the Effective Date.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 42:** Admit that on or about June 21, 2023, Seller or Seller's agent notified Purchaser's agent, Jake Wilkinson, that tires had been removed from the Property.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 43:** Admit that after June 21, 2023, tires and/or tire fragments remained on the Property notwithstanding Seller's notification that they had been removed.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 44:** Admit that on or about January 11, 2024, Seller again notified Purchaser that tires had been removed from the Property.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 45:** Admit that after January 11, 2024, tires and/or tire fragments remained on the Property notwithstanding Seller's second notification that they had been removed.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 46:** Admit that Seller did not remove all Tires from the Property within thirty (30) days after the Effective Date of May 26, 2023.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 47:** Admit that as of January 10, 2026, Seller had not satisfied all of the conditions precedent to closing set forth in Section 8 of the Contract.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 48:** Admit that Section 8(d) of the Contract provides that, as a condition precedent to Purchaser's obligations, Seller shall have removed all Tires from the Property.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 49:** Admit that Section 8(e) of the Contract provides that, as a condition precedent to Purchaser's obligations, all covenants and other obligations of Seller which if not fully and timely performed would have a material, adverse effect on Purchaser's rights under the Contract shall have been fully and timely performed in all material respects.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 50:** Admit that Section 8(f) of the Contract provides that, as a condition precedent to Purchaser's obligations, Seller shall have delivered to Purchaser the Due Diligence Items and all updates thereof required pursuant to Section 4(a) of the Contract.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 51:** Admit that Seller did not deliver all of the Due Diligence Items to Purchaser within ten (10) days following the Effective Date as required by Section 4(a) of the Contract.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 52:** Admit that Purchaser did not waive any of the conditions precedent to closing set forth in Section 8 of the Contract.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 53:** Admit that pursuant to Section 8(g) of the Contract, if all of the conditions precedent are not fully satisfied or waived by Purchaser as of the Closing Date, Purchaser has the right, but not the obligation, to terminate the Contract.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 54:** Admit that Purchaser has at all relevant times been ready, willing, and able to close the transaction contemplated by the Contract upon Seller's satisfaction of its contractual obligations.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 55:** Admit that on or about February 12, 2026, Purchaser's counsel communicated Purchaser's readiness to close upon satisfaction of Seller's contractual obligations.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 56:** Admit that Seller or Seller's agent represented to one or more third parties that the Property "is going to be coming back on the market."

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 57:** Admit that Section 8(g) of the Contract provides that nothing contained in Section 8 is intended to limit any remedies available to Purchaser pursuant to Section 11(b) of the Contract if Seller defaults.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 58:** Admit that Section 11(b) of the Contract provides that if Seller defaults under the Contract, Purchaser shall be entitled to seek to enforce specific performance of Seller's obligations.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 59:** Admit that Section 11(b) of the Contract provides that if the remedy of specific performance is not available for any reason, Purchaser shall be entitled to pursue the recovery of damages from Seller resulting from such breach.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 60:** Admit that Section 11(b) of the Contract provides that if Seller defaults, Purchaser may terminate the Contract and Seller shall reimburse Purchaser for Purchaser's third-party out-of-pocket costs and expenses incurred by Purchaser in connection with the transaction not to exceed $200,000.00.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 61:** Admit that Purchaser incurred more than $1,500,000.00 in due diligence and development costs in connection with its efforts to purchase the Property.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 62:** Admit that Purchaser deposited Earnest Money in accordance with the Contract.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 63:** Admit that Purchaser never communicated to Seller that Purchaser does not intend to purchase the Property.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 64**: Admit that Defendants have not and did not contract with any party to conduct any testing of samples of soil, groundwater, or other environmental media or wastes at, on, in, under, or about the Property at any time other than what is reported in the January 26 Phase II ESA Report.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 65:** Admit that no provision of the Contract requires Purchaser to accept an environmental report that does not include the confirmation required by Section 7(c).

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 66:** Admit that Seller made no less than two (2) notifications that tires had been removed from the Property that proved to be inaccurate.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 67:** Admit that the Contract's remedies provision (Section 11(a)) limits Seller's sole and exclusive remedy for Purchaser's default to retention of Earnest Money deposited.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 68:** Admit that Cresson Moon Properties, LP has an ownership interest in the Property.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 69:** Admit that from December 15, 2025 to January 26, 2026, Purchaser responded to each of Seller's written proposals to establish a closing date.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 70**: Admit that no samples of soil, groundwater, or any other environmental media were collected, tested, or analyzed by Whitehead, or any other party acting on behalf of Defendants, at any time from the Effective Date of the Contract through the January 26 Phase II ESA Report, related to household waste or other waste disposed of, placed, buried, or located on the Property.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 71**: Admit that no samples of soil, groundwater, or any other environmental media were collected, tested, or analyzed by Whitehead or any other party acting on behalf of Defendants, at any time from the Effective Date of the Contract through the January 26 Phase II ESA Report, related to any potential environmental contamination from electrical equipment or transformers currently or formerly located on the Property.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 72**: Admit that no samples of soil, groundwater, or any other environmental media were collected, tested, or analyzed by Whitehead or any other party acting on behalf of Defendants, at any time from the Effective Date of the Contract through the January 26 Phase II ESA Report, related to any potential environmental contamination from operations of grain silos or other agricultural product storage currently or formerly located on the Property.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 73**: Admit that no samples of soil, groundwater, or any other environmental media were collected, tested, or analyzed by Whitehead or any other party acting on behalf of Defendants, at any time from the Effective Date of the Contract through the January 26 Phase II ESA Report, related to any potential environmental contamination from farming or any other agricultural activity currently or formerly conducted on the Property.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 74**: Admit that no samples of soil, groundwater, or any other environmental media were collected, tested, or analyzed by Whitehead or any other party acting on behalf of Defendants, at any time from the Effective Date of the Contract through the

January 26 Phase II ESA Report, related to naturally occurring radioactive material or for any other radioactivity on the Property.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 75**: Admit that no radiation detection devices or equipment were used by Whitehead or any other party acting on behalf of Defendants to test for or detect naturally occurring radioactive material or for any other radioactivity on the Property at any time from the Effective Date of the Contract through the January 26 Phase II ESA Report.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 76:** Admit that no samples of soil, groundwater, or any other environmental media were collected, tested, or analyzed by Whitehead or any other party acting on behalf of Defendants, at any time from the Effective Date of the Contract through the January 26 Phase II ESA Report, related to any potential environmental contamination from pipelines or pipeline facilities currently or formerly located on the Property.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 77:** Admit that no samples of soil, groundwater, or any other environmental media were collected, tested, or analyzed by Whitehead or any other party acting on behalf of Defendants, at any time from the Effective Date of the Contract through the January 26 Phase II ESA Report, related to any potential environmental contamination from any steel or other drums or containers currently or formerly located on the Property.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 78**: Admit that no samples of water from any water wells on the Property were collected, tested, or analyzed by Whitehead or any other party acting on behalf of Defendants at any time from the Effective Date of the Contract through the January 26 Phase II ESA Report.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 79**: Admit that no samples of soil, groundwater, or any other environmental media were collected, tested, or analyzed by Whitehead or any other party acting on behalf of Defendants, at any time from the Effective Date of the Contract through the January 26 Phase II ESA Report, related to any potential environmental contamination from any septic systems or other sewage management systems currently or formerly located on the Property.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 80**: Admit that Whitehead did not conduct its own Phase I Environmental Site Assessment of the Property prior to conducting the work reported in the January 26 Phase II ESA Report.

**RESPONSE:**

Respectfully submitted,

*/s/ Blake J. Brownshadel*
Blake J. Brownshadel
State Bar No. 24073969
bbrownshadel@cbsattorneys.com
Christopher A. John
State Bar No. 24110053
cjohn@cbsattorneys.com
Emma C. Jenevein
State Bar No. 24136916
ejenevein@cbsattorneys.com
**CALHOUN BHELLA & SECHREST LLP**
325 N. Saint Paul St., Suite 2900
Dallas, Texas 75201
Telephone: (214) 981-9200

**COUNSEL FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2026, the foregoing document was served on all counsel of record via the Court's CM/ECF electronic filing system:

Scott A. Wheatley
swheatley@jw.com
Lee B. Hunt
lhunt@jw.com
Trevor J. Paul
tpaul@jw.com
JACKSON WALKER LLP
777 Main Street, Suite 2100
Fort Worth, Texas 76102

*/s/ Blake J. Brownshadel*
Blake J. Brownshadel

**2026-09-21**
**Declaration of Blake Brownshadel**

**Exhibit B**

**, IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **CHALLENGER CRESSON I, LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BILL SANDERS, INDEPENDENT EXECUTOR OF THE ESTATE OF PEARL SMELLEY; CRESSON MOON PROPERTIES, LP; RICHARD DAVID SMELLEY AND AMY ELIZABETH SMELLEY; TAMMY MARIE GRAHAM AND GREGORY SCOTT GRAHAM; AND DEBORAH RUTH DAVIS AND DAVID GLENN DAVIS,**<br><br>**Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Civil Action No. 4:26-CV-00231-P** |

**PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANTS**

TO: Defendants Bill Sanders, Independent Executor of the Estate of Pearl Smelley; Cresson Moon Properties, LP; Richard David Smelley and Amy Elizabeth Smelley; Tammy Marie Graham and Gregory Scott Graham; and Deborah Ruth Davis and David Glenn Davis, by and through their attorneys of record, Jackson Walker LLP, 777 Main Street, Suite 2100, Fort Worth, Texas 76102.

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Challenger Cresson I, LLC ("Plaintiff" or "Purchaser") requests that Defendants produce for inspection and copying the following Documents within thirty (30) days of service of these Requests.

**DEFINITIONS**

1. "Contract" means the Standard Contract of Sale dated effective May 26, 2023, by and between Defendants (as Seller) and Challenger Realty Group, LLC (as Purchaser), together with all exhibits, schedules, appendices, and addenda thereto.

2. "First Amendment" means the First Amendment to Standard Contract of Sale effective December 4, 2024.

3. "Second Amendment" means the Second Amendment to Standard Contract of Sale effective December 31, 2025.

4. "Property" means that certain approximately 1,674 gross contiguous acres of land with an address of 7700 Old Granbury Road, Cresson, Texas, situated in Hood County, Texas, as more particularly described in the Contract.

5. "January 26 ESA" means the Limited Phase II Investigation prepared by Whitehead Environmental Solutions, LLC and delivered to Purchaser on or about January 26, 2026.

6. "Seller" or "Defendants" means Bill Sanders, Independent Executor of the Estate of Pearl Smelley; Cresson Moon Properties, LP; Richard David Smelley and Amy Elizabeth Smelley; Tammy Marie Graham and Gregory Scott Graham; and Deborah Ruth Davis and David Glenn Davis, individually and collectively.

7. "Purchaser" or "Plaintiff" means Challenger Cresson I, LLC, and its predecessors-in-interest, including Challenger Realty Group, LLC.

8. "Document" or "Documents" shall have the broadest meaning permitted under Rule 34 of the Federal Rules of Civil Procedure and includes any written, printed, typed, drawn, punched, taped, filed, recorded, or graphic matter in Your possession, custody, or control, including but not limited to electronically stored information ("ESI"), correspondence, memoranda, notes, reports, studies, contracts, agreements, invoices, receipts, photographs, recordings, spreadsheets, databases, and all other forms of data compilation.

9. "Communication" means any contact or act by which information or knowledge is transmitted or conveyed between two or more persons, including but not limited to statements, dialogues, conversations, discussions, conferences, telephone calls, electronic mail, text messages, instant messages, and all other forms of verbal or written communication.

10. "Relating to" or "related to" means, in addition to its customary and usual meaning, discussing, referring to, pertaining to, reflecting, showing, evidencing, or recording.

11. "You" or "Your" means Defendants, individually and collectively, together with all present and former officers, directors, managers, members, employees, agents, representatives, consultants, and any other persons or entities acting on their behalf.

12. "Person" means a natural person, corporation, partnership, unincorporated association, or any other form of business, governmental, public, or charitable entity.

13. "Identify" when used with respect to a Document means to state the date, author, recipients, subject matter, and present location and custodian of the Document.

14. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all documents that might otherwise be outside its scope.

## INSTRUCTIONS

1. These Requests for Production are propounded pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure. Responses and production are due within thirty (30) days of service.

2. Documents should be produced as they are kept in the usual course of business or organized and labeled to correspond to the categories in the Requests.

3. If any Document responsive to these Requests is withheld on the basis of a claim of privilege or work product protection, provide a privilege log in compliance with Federal Rule of Civil Procedure 26(b)(5) identifying: (a) the nature of the Document; (b) the date of the Document; (c) the author(s) and recipient(s); (d) the general subject matter; and (e) the privilege or protection claimed.

4. These Requests are continuing in nature and require supplemental responses in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

5. If any Document responsive to a Request has been lost, destroyed, or is otherwise unavailable, identify the Document, state the circumstances under which it became unavailable, and identify any person with knowledge of the Document's contents.

6. Electronically stored information should be produced in its native format or, where practicable, in a reasonably usable form, including metadata.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:** All Documents constituting or relating to the Contract, including but not limited to all drafts, redlines, mark-ups, exhibits, schedules, appendices, addenda, and all amendments thereto (including the First Amendment and the Second Amendment).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 2:** All Due Diligence Items as defined in Section 4(a) and Exhibit "B" of the Contract, whether delivered or not delivered to Purchaser.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 3:** All Documents and Communications relating to the removal or attempted removal of tires and parts thereof (as defined in Section 7(d) of the Contract) from the Property.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 4:** All Communications between Defendants regarding the existence, location, or removal of tires from the Property from the Contract Effective Date to the present.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 5:** All environmental assessments, reports, investigations, testing data, laboratory results, and analyses relating to the Property prepared by or for Defendants or received by Defendants from any third party.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 6:** All Documents and Communications relating to the remediation, removal, or treatment of any environmental contamination, Hazardous Substances, hazardous materials located in, under, on or about the Property.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 7:** All Documents relating to the engagement of Whitehead Environmental Solutions, LLC (or any other environmental consultant or engineer retained in connection with the Property and any other prior or subsequent engagements with the same) related to the sale of the Property to Purchaser or otherwise and at any time and for any purpose.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 8:** All Documents and Communications relating to the environmental condition of the Property, including but not limited to the presence, storage, use, generation, manufacture, or disposal of Hazardous Substances (as defined in Section 6(i) of the Contract) in, under, on or about the Property.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 9:** All Documents and Communications relating to any environmental claims, litigation, administrative proceedings, or governmental notices relating to the Property.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 10:** All Documents relating to above-ground and underground storage tanks on the Property, including installation records, permits, removal records, monitoring reports, closure documentation, regulatory filings with the Texas Commission

on Environmental Quality or any other governmental authority, and any evidence of leaks, spills, or releases from such tanks, and the contents of such above-ground and underground storage tanks.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 11:** All Documents and Communications relating to oil and gas wells, mineral leases, oil and gas leases, well pads, pits, tanks and tank batteries, disposal wells and any other related activities and operations and Railroad Commission of Texas records pertaining to the Property.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 12:** All Documents and Communications relating to shut-in payments received, due, or claimed with respect to the Property, including the documentation Defendants agreed to provide within five business days following the First Amendment Effective Date pursuant to Section 4(b) of the First Amendment.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 13:** All Communications between or among Defendants (including their agents and representatives) relating to the Contract, the Property, the transaction, environmental issues, tire removal, closing, or any obligation under the Contract or its amendments.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 14:** All Communications between Defendants (or their agents or representatives) and any third parties, including but not limited to real estate agents, brokers, marketing professionals, appraisers, or potential purchasers, relating to the marketing, listing, valuation, or sale of the Property from May 26, 2023 to the present.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 15:** All Documents and Communications relating to any efforts to market, list, offer, or sell the Property to any person or entity other than Plaintiff from May 26, 2023 to the present.

**REQUEST FOR PRODUCTION NO. 16:** All Communications with Whitehead Environmental Solutions, LLC (or any other environmental consultant or engineer retained in connection with the Property and any other prior or subsequent engagements with the same) related to the sale of the Property to Purchaser or otherwise and at any time and for any purpose.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 17:** All Communications with Purchaser or Purchaser's agents (including Jake Wilkinson, Jeff Libby, Patty Herrera, and Charles Gallub) relating to the Contract, the Property, or the transaction.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 18:** All Documents relating to Defendants' attempts to schedule or establish a closing date, including all written Communications from December 15, 2025 through January 26, 2026.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 19:** All Documents supporting or relating to Defendants' contention that the January 26 ESA satisfies the requirements of Section 7(c) of the Contract, including but not limited to any documents addressing whether the January 26 ESA contains the "confirmation that no environmental contamination exists on or with respect to the Property" as required by the Contract.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 20:** All Documents relating to insurance policies on the Property or relating to the transaction, including general liability, environmental liability, professional liability, contractors' pollution liability, and property insurance policies.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 21:** All Documents relating to any requests for additional insured status, certificates of insurance, and correspondence with insurers regarding coverage for environmental issues at the Property.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 22:** All title documents, title commitments, title policies, title objection letters, title response letters, exception documents, UCC searches, lien searches, and surveys relating to the Property, including any documents evidencing title defects, encumbrances, liens, easements, or restrictions affecting the Property.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 23:** All Documents relating to the Earnest Money deposits under the Contract, including escrow agreements, deposit records, and any Communications regarding the same.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 24:** All Documents reflecting or relating to Defendants' carrying costs for the Property, including property taxes, insurance premiums, maintenance expenses, security costs, and financing costs.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 25:** All Documents supporting or relating to any damages claimed by Defendants in their Counterclaims.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 26:** All Documents supporting or relating to each of Defendants' Affirmative Defenses, as set forth in Defendants' Original Answer.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 27:** All Documents relating to the Memorandum of Agreement filed with the Hood County Clerk on or about June 8, 2023.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 28:** All Documents and Communications relating to Defendants' alleged readiness, willingness, and ability to close the transaction at any time, including evidence of clear title, satisfaction of liens, and ability to convey the Property.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 29:** All Documents relating to any conditions precedent to Closing under the Contract, including evidence of the satisfaction or non-satisfaction of each such condition.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 30:** All Documents and Communications relating to any gas pipelines traversing the Property.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 31:** All Documents and Communications relating to any steel drums, containers, or similar vessels containing oil-based products, petroleum, or Hazardous Substances found on the Property, including photographs, inspection reports, removal records, disposal manifests.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 32:** All Documents and Communications regarding the discovery, handling, or removal of Hazardous Substances found on the Property.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 33:** All Documents relating to the plugging of oil and gas wells on the Property, including any documents confirming the proper abandonment of wells and associated equipment.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 34:** All Documents and Communications relating to the Smelley Lease or any other oil and gas leases affecting the Property.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 35:** All Documents and Communications relating to Defendants' contention that Purchaser engaged in anticipatory repudiation or breach of the Contract, including any evidence that Purchaser indicated an intention not to perform its obligations under the Contract.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 36:** All Documents and Communications supporting Defendants' contention that Purchaser "repeatedly and unreasonably delayed Closing" as alleged in Defendants' Counterclaims.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 37:** All Documents and Communications relating to entitlements, permits, approvals, zoning, and regulatory matters affecting the Property.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 38:** All Documents and Communications relating to utilities serving or available to the Property, including water, sewer, electricity, gas, and telecommunications.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 39:** All Documents and Communications relating to easements benefitting or burdening the Property, including but not limited to recorded and unrecorded easements, access agreements, utility easements, and pipeline easements.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 40:** All Documents relating to taxes assessed against the Property, including any correspondence with taxing authorities.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 41:** All Documents relating to any legal proceedings, lawsuits, claims, disputes, or threatened litigation involving the Property or any of the Defendants in their capacity as owners of the Property.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 42:** All Documents and Communications relating to any material adverse change to the Property from the Contract Effective Date to the present, including any damage to the Property, changes in condition, environmental incidents, or other events that may have affected the Property.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 43:** All Documents relating to Defendants' representations and warranties under Section 6 of the Contract, including any Documents evidencing the truth or falsity of such representations and warranties at the Contract Effective Date and as of any proposed Closing Date.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 44:** All Documents and Communications relating to Defendants' efforts to cooperate with Purchaser in connection with entitlements, easements, utilities, zoning, platting, and development agreements.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 45:** All Documents and Communications relating to any appraisals, valuations, or assessments of the Property.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 46:** All Documents and Communications between Defendants and Whitehead Environmental Solutions, LLC (or any principal thereof) prior to December 2025, including any prior business relationship, referrals, or engagements.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 47:** All financial records, bank statements, and Documents reflecting Earnest Money deposits received from Purchaser, including the current location and status of all such funds.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 48:** All Documents and Communications reflecting Defendants' knowledge of environmental contamination, Hazardous Substances, or underground storage tanks, oil or gas exploration, production, operations, or activities, agricultural activities on the property, including storage of grain or other farm products or crops, involving Hazardous Substances, and the use of agricultural chemicals, including pesticides, insecticides, fungicides, rodenticides on the Property prior to the Contract Effective Date.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 49:** Cell phone records, text messages, and messaging app Communications (including WhatsApp, Signal, or similar) between or among Defendants and their agents relating to the Contract, the Property, Purchaser, or this litigation.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 50:** All Documents reflecting the current fair market value of the Property, including appraisals, broker opinions of value, or comparable sales analyses from January 2023 to the present.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 51:** All Documents relating to Seller's compliance with Section 11(a) of the Contract, including any notice of default issued to Purchaser and whether the ten (10) day cure period was provided.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 52:** All Documents and Communications reflecting any offers, letters of intent, or proposals received from third parties for the purchase of the Property from May 26, 2023 to the present.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 53:** All estate administration records for the Estate of Pearl Smelley relating to the Property, including probate filings, inventory, and court orders authorizing or addressing the sale of the Property.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 54:** All Documents and Communications relied upon to represent as stated in Section 6(i) that "[n]o Hazardous Substances . . . have been incorporated, used, manufactured, stored, or disposed of in, on, under, or about the Property".

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 55:** All Documents and Communications relating to any groundwater wells located on the Property, including any sampling, testing, or other analysis of the water from such wells.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 56:** All Documents and Communications relating to any groundwater monitoring wells located on the Property, including any sampling, testing, or other analysis of the water from such wells.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 57:** All Documents and Communications relating to any household waste or other waste disposed of, placed, buried, or located on the Property, including any sampling, testing, or other analysis of such wastes, including any paints, solvents, pesticides, automotive fluids, batteries, or asbestos.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 58:** All Documents and Communications relating to any electrical equipment or transformers currently or formerly located on the Property, including any sampling, testing, or other analysis of such electrical equipment or transformers for polychlorinated biphenyls or other chemicals or Hazardous Substances.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 59:** All Documents and Communications relating to any grain silos or other agricultural product storage currently or formerly located on the Property, including any sampling, testing, or other analysis of soil, groundwater, or other environmental media in, under, on or about such facilities, and any agricultural chemicals used on the Property at any time, including organochlorine pesticides (e.g., DDT, chlordane, aldrin, lindane, and carbon tetrachloride), arsenic, and any other pesticides, insecticides, fungicides, rodenticides, and other agricultural chemicals and Hazardous Substances related to agricultural activities.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 60:** All Documents and Communications relating to any naturally occurring radioactive material currently or formerly located on the Property, including any sampling, testing, or other analysis of soil, groundwater, or other environmental media in, under, on or about the Property for any naturally occurring radioactive material or any other radioactivity.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 61:** All Documents and Communications relating to any electrical equipment or transformers currently or formerly located on the Property, including any sampling, testing, or other analysis of such equipment or any materials or fluids contained in or part of such equipment, and including any sampling, testing, or other analysis of soil, groundwater, or other environmental media on or around such equipment.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 62:** All Documents and Communications relating to any pipelines and related facilities currently or formerly located on the Property, including any sampling, testing, or other analysis of soil, groundwater, or other environmental media in, under, on or about such facilities.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 63:** All Documents and Communications relating to any sampling, testing, analysis, or assessment of any soil, groundwater, or other environmental media in, under, on or about the Property.

**RESPONSE:**

Respectfully submitted,

*_/s/ Blake J. Brownshadel_*
Blake J. Brownshadel
State Bar No. 24073969
bbrownshadel@cbsattorneys.com
Christopher A. John
State Bar No. 24110053
cjohn@cbsattorneys.com
Emma C. Jenevein
State Bar No. 24136916
ejenevein@cbsattorneys.com
**CALHOUN BHELLA & SECHREST LLP**
325 N. Saint Paul St., Suite 2900
Dallas, Texas 75201
Telephone: (214) 981-9200

**COUNSEL FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2026, the foregoing document was served on all counsel of record via the Court's CM/ECF electronic filing system:

Scott A. Wheatley
swheatley@jw.com
Lee B. Hunt
lhunt@jw.com
Trevor J. Paul
tpaul@jw.com
JACKSON WALKER LLP
777 Main Street, Suite 2100
Fort Worth, Texas 76102

*_/s/ Blake J. Brownshadel_*
Blake J. Brownshadel

**2026-09-21**

**Declaration of Blake Brownshadel**

**Exhibit C**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **CHALLENGER CRESSON I, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:26-CV-00231-P** |
| | § | |
| **BILL SANDERS, INDEPENDENT EXECUTOR OF THE ESTATE OF PEARL SMELLEY; CRESSON MOON PROPERTIES, LP; RICHARD DAVID SMELLEY AND AMY ELIZABETH SMELLEY; TAMMY MARIE GRAHAM AND GREGORY SCOTT GRAHAM; AND DEBORAH RUTH DAVIS AND DAVID GLENN DAVIS,** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANTS RICHARD DAVID SMELLEY, AMY ELIZABETH SMELLEY, TAMMY MARIE GRAHAM, GREGORY SCOTT GRAHAM, DEBORAH RUTH DAVIS, AND DAVID GLENN DAVIS**

TO: Defendants Richard David Smelley, Amy Elizabeth Smelley, Tammy Marie Graham, Gregory Scott Graham, Deborah Ruth Davis, and David Glenn Davis, by and through their counsel of record, Jackson Walker LLP, 777 Main Street, Suite 2100, Fort Worth, Texas 76102.

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Challenger Cresson I, LLC ("Plaintiff" or "Purchaser") propounds the following Interrogatories to Defendants Richard David Smelley, Amy Elizabeth Smelley, Tammy Marie Graham, Gregory Scott Graham, Deborah Ruth Davis, and David Glenn Davis (collectively, the "Mineral Owners") and requests that the Mineral Owners answer each Interrogatory separately, fully, and under oath within thirty (30) days of service.

## DEFINITIONS

1. "Contract" means the Standard Contract of Sale dated effective May 26, 2023, by and between Defendants (as Seller) and Challenger Realty Group, LLC (as Purchaser), together with all exhibits, schedules, appendices, and addenda thereto.

2. “First Amendment” means the First Amendment to Standard Contract of Sale effective December 4, 2024.

3. “Second Amendment” means the Second Amendment to Standard Contract of Sale effective December 31, 2025.

4. “Property” means that certain approximately 1,674 gross contiguous acres of land with an address of 7700 Old Granbury Road, Cresson, Texas, situated in Hood County, Texas, as more particularly described in the Contract.

5. “January 26 Phase II ESA” means the Limited Phase II Investigation prepared by Whitehead Environmental Solutions, LLC and delivered to Purchaser on or about January 26, 2026.

6. “Seller” or “Defendants” means Bill Sanders, Independent Executor of the Estate of Pearl Smelley; Cresson Moon Properties, LP; Richard David Smelley and Amy Elizabeth Smelley; Tammy Marie Graham and Gregory Scott Graham; and Deborah Ruth Davis and David Glenn Davis, individually and collectively. “Defendant Sanders” means Bill Sanders, Independent Executor of the Estate of Pearl Smelley.

7. “Purchaser” or “Plaintiff” means Challenger Cresson I, LLC, and its predecessors-in-interest, including Challenger Realty Group, LLC.

8. “Document” has the broadest meaning permitted under Rule 34 of the Federal Rules of Civil Procedure and includes electronically stored information (“ESI”).

9. “Communication” means any contact or act by which information or knowledge is transmitted or conveyed between two or more persons, including but not limited to statements, conversations, telephone calls, recordings, electronic mail, text messages, and all other forms of verbal or written communication.

10. “Identify” when used with respect to a person means to state the person’s full name, last known address, telephone number, and relationship to the parties. When used with respect to a Document means to state the date, author, recipients, subject matter, and present location.

11. “Describe” or “state” means to detail fully and completely the facts or mixed issues of fact and law which concern or relate to the inquiry being made.

12. “Relating to” means, in addition to its customary and usual meaning, discussing, referring to, pertaining to, reflecting, showing, evidencing, or recording.

13. “Person” means a natural person, corporation, partnership, unincorporated association, or any other form of business, governmental, public, or charitable entity.

14. "You" or "Your" means the Mineral Owners, individually and collectively, together with all present and former agents, representatives, and consultants, and any other persons or entities acting on their behalf.

15. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the interrogatory all information that might otherwise be outside its scope.

16. "Environmental Laws" is defined in the Agreement.

17. "Hazardous Substances" is defined in the Agreement.

18, "Tires" is defined in the Agreement.

## INSTRUCTIONS

1. These Interrogatories are propounded pursuant to Rule 33 of the Federal Rules of Civil Procedure. Written responses must be served within thirty (30) days of service.

2. Each Interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath; the person who makes the answers must sign them, and the attorney who objects must sign any objections.

3. In the event any information is withheld on a claim of attorney-client privilege or work product doctrine, provide a privilege log consistent with Federal Rule of Civil Procedure 26(b)(5).

4. These Interrogatories are continuing in nature and require supplemental responses in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

5. Pursuant to Rule 33(d), if the answer to an Interrogatory may be determined by examining business records and the burden of deriving the answer is substantially the same for either party, You may specify the records from which the answer may be derived and afford Plaintiff reasonable opportunity to examine such records.

6. These Interrogatories shall not exceed twenty-five (25) in number, including discrete subparts, in compliance with Rule 33(a)(1) of the Federal Rules of Civil Procedure.

## INTERROGATORIES

**INTERROGATORY NO. 1:** Identify and describe the role of each and every person who has knowledge of any facts relevant to this action or who was involved in the Contract on Your behalf, including the negotiation, drafting, execution, performance, or any amendment thereto.

**RESPONSE:**

**INTERROGATORY NO. 2:** State the complete factual basis for each and every Affirmative Defense asserted by You, including the identity of all persons with knowledge and all Documents supporting each defense.

**RESPONSE:**

**INTERROGATORY NO. 3:** State the complete factual and legal basis for each and every Counterclaim asserted by You, including all damages sought, each act or omission by Plaintiff that You contend constitutes a breach, repudiation, or other basis for relief, and the method of calculation for each category of damages.

**RESPONSE:**

**INTERROGATORY NO. 4:** Describe Your role and involvement, including in Your capacity as a manager of Cresson Moon Management, LLC, if applicable, in the performance of all obligations under the Contract.

**RESPONSE:**

**INTERROGATORY NO. 5:** Identify all Communications by You or Your agents to any third parties regarding the potential sale, marketing, listing, or availability of the Property from May 26, 2023 to the present, including the date, manner, content, and identity of each third party.

**RESPONSE:**

**INTERROGATORY NO. 6:** State all knowledge or information You personally have regarding the presence of any environmental contamination, Hazardous Substances, hazardous materials, Tires, or above-ground and/or underground storage tanks in, on, under, or about the Property.

**RESPONSE:**

Respectfully submitted,

*/s/ Blake J. Brownshadel*
Blake J. Brownshadel
State Bar No. 24073969
bbrownshadel@cbsattorneys.com
Christopher A. John
State Bar No. 24110053
cjohn@cbsattorneys.com
Emma C. Jenevein
State Bar No. 24136916
ejenevein@cbsattorneys.com
**CALHOUN BHELLA & SECHREST LLP**
325 N. Saint Paul St., Suite 2900
Dallas, Texas 75201
Telephone: (214) 981-9200

**COUNSEL FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2026, the foregoing document was served on all counsel of record via the Court's CM/ECF electronic filing system:

Scott A. Wheatley
swheatley@jw.com
Lee B. Hunt
lhunt@jw.com
Trevor J. Paul
tpaul@jw.com
JACKSON WALKER LLP
777 Main Street, Suite 2100
Fort Worth, Texas 76102

*/s/ Blake J. Brownshadel*
Blake J. Brownshadel

**2026-09-21**

**Declaration of Blake Brownshadel**

**Exhibit D**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **CHALLENGER CRESSON I, LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BILL SANDERS, INDEPENDENT EXECUTOR OF THE ESTATE OF PEARL SMELLEY; CRESSON MOON PROPERTIES, LP; RICHARD DAVID SMELLEY AND AMY ELIZABETH SMELLEY; TAMMY MARIE GRAHAM AND GREGORY SCOTT GRAHAM; AND DEBORAH RUTH DAVIS AND DAVID GLENN DAVIS,**<br><br>**Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Civil Action No. 4:26-CV-00231-P** |

**<u>PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT CRESSON MOON PROPERTIES, LP</u>**

TO: Defendant Cresson Moon Properties, LP, by and through its attorneys of record, Jackson Walker LLP, 777 Main Street, Suite 2100, Fort Worth, Texas 76102.

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Challenger Cresson I, LLC ("Plaintiff" or "Purchaser") propounds the following Interrogatories to Defendant Cresson Moon Properties, LP ("CMPLP") and requests that CMPLP answer each Interrogatory separately, fully, and under oath within thirty (30) days of service.

**<u>DEFINITIONS</u>**

1. "Contract" means the Standard Contract of Sale dated effective May 26, 2023, by and between Defendants (as Seller) and Challenger Realty Group, LLC (as Purchaser), together with all exhibits, schedules, appendices, and addenda thereto.

2. "First Amendment" means the First Amendment to Standard Contract of Sale effective December 4, 2024.

3. "Second Amendment" means the Second Amendment to Standard Contract of Sale effective December 31, 2025.

4. “Property” means that certain approximately 1,674 gross contiguous acres of land with an address of 7700 Old Granbury Road, Cresson, Texas, situated in Hood County, Texas, as more particularly described in the Contract.

5. “January 26 Phase II ESA” means the Limited Phase II Investigation prepared by Whitehead Environmental Solutions, LLC and delivered to Purchaser on or about January 26, 2026.

6. “Seller” or “Defendants” means Bill Sanders, Independent Executor of the Estate of Pearl Smelley; Cresson Moon Properties, LP; Richard David Smelley and Amy Elizabeth Smelley; Tammy Marie Graham and Gregory Scott Graham; and Deborah Ruth Davis and David Glenn Davis, individually and collectively. “Defendant Sanders” means Bill Sanders, Independent Executor of the Estate of Pearl Smelley.

7. “Purchaser” or “Plaintiff” means Challenger Cresson I, LLC, and its predecessors-in-interest, including Challenger Realty Group, LLC.

8. “Document” has the broadest meaning permitted under Rule 34 of the Federal Rules of Civil Procedure and includes electronically stored information (“ESI”).

9. “Communication” means any contact or act by which information or knowledge is transmitted or conveyed between two or more persons, including but not limited to statements, conversations, telephone calls, recordings, electronic mail, text messages, and all other forms of verbal or written communication.

10. “Identify” when used with respect to a person means to state the person’s full name, last known address, telephone number, and relationship to the parties. When used with respect to a Document means to state the date, author, recipients, subject matter, and present location.

11. “Describe” or “state” means to detail fully and completely the facts or mixed issues of fact and law which concern or relate to the inquiry being made.

12. “Relating to” means, in addition to its customary and usual meaning, discussing, referring to, pertaining to, reflecting, showing, evidencing, or recording.

13. “Person” means a natural person, corporation, partnership, unincorporated association, or any other form of business, governmental, public, or charitable entity.

14. “You” or “Your” means Cresson Moon Properties, LP, together with its general partner, Cresson Moon Management, LLC, and all present and former officers, directors, managers, members, employees, agents, representatives, and consultants acting on its behalf.

15. “And” and “or” shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the interrogatory all information that might otherwise be outside its scope.

16. “Environmental Laws” is defined in the Agreement.

17. “Hazardous Substances” is defined in the Agreement.

18, “Tires” is defined in the Agreement.

## INSTRUCTIONS

1. These Interrogatories are propounded pursuant to Rule 33 of the Federal Rules of Civil Procedure. Written responses must be served within thirty (30) days of service.

2. Each Interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath; the person who makes the answers must sign them, and the attorney who objects must sign any objections.

3. In the event any information is withheld on a claim of attorney-client privilege or work product doctrine, provide a privilege log consistent with Federal Rule of Civil Procedure 26(b)(5).

4. These Interrogatories are continuing in nature and require supplemental responses in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

5. Pursuant to Rule 33(d), if the answer to an Interrogatory may be determined by examining business records and the burden of deriving the answer is substantially the same for either party, You may specify the records from which the answer may be derived and afford Plaintiff reasonable opportunity to examine such records.

6. These Interrogatories shall not exceed twenty-five (25) in number, including discrete subparts, in compliance with Rule 33(a)(1) of the Federal Rules of Civil Procedure.

## INTERROGATORIES

**INTERROGATORY NO. 1:** Identify and describe the role of each and every person who has knowledge of any facts relevant to this action or who was involved in the Contract on Your behalf, including the negotiation, drafting, execution, performance, or any amendment thereto.

**RESPONSE:**

**INTERROGATORY NO. 2:** State the complete factual basis for each and every Affirmative Defense asserted by You, including the identity of all persons with knowledge and all Documents supporting each defense.

**RESPONSE:**

**INTERROGATORY NO. 3:** State the complete factual and legal basis for each and every Counterclaim asserted by You, including all damages sought, each act or omission by Plaintiff that You contend constitutes a breach, repudiation, or other basis for relief, and the method of calculation for each category of damages.

**RESPONSE:**

**INTERROGATORY NO. 4:** Identify and describe all Due Diligence Items that were delivered to Plaintiff, the date of delivery for each, and all Due Diligence Items that You failed to deliver, if any, including the reason for non-delivery. Additionally, describe all shut-in payments received by You Relating to the Property.

**RESPONSE:**

**INTERROGATORY NO. 5:** Describe Your efforts to remove Tires, remediate environmental contamination, remove hazardous materials, and remove or decommission any above-ground and/or underground storage tanks located in, on, under, or about the Property, including all efforts to remove or cause to be removed any such items and the remediation, removal, or treatment of any environmental contamination or hazardous materials, and including the dates, persons or companies involved, scope of work, and results.

**RESPONSE:**

**INTERROGATORY NO. 6:** Identify all environmental engineers, consultants, or firms retained by You in connection with the Property, and describe the scope, methodology, limitations, and findings of each and every ESA conducted on the Property.

**RESPONSE:**

**INTERROGATORY NO. 7:** State the basis for Your contention that any ESA satisfies Seller's obligations under the Contract, and describe Your efforts to provide a report prepared by a licensed environmental engineer confirming that no environmental contamination exists on or with respect to the Property.

**RESPONSE:**

**INTERROGATORY NO. 8:** Identify all oil and gas wells, above-ground storage tanks, underground storage tanks, and any other structures or equipment Relating to oil, gas, or hazardous materials located on the Property, and describe the status, contents, and regulatory compliance history of each.

**RESPONSE:**

**INTERROGATORY NO. 9:** Identify all Communications by You or Your agents to any third parties regarding the potential sale, marketing, listing, or availability of the Property from May 26, 2023 to the present, including the date, manner, content, and identity of each third party.

**RESPONSE:**

**INTERROGATORY NO. 10:** Describe Your readiness, willingness, and ability to close the transaction contemplated by the Contract, including all efforts to establish a closing date and all circumstances affecting Your ability to close, and identify any liens, encumbrances, or title defects affecting the Property.

**RESPONSE:**

**INTERROGATORY NO. 11:** Identify and describe all efforts You have undertaken to mitigate Your alleged damages.

**RESPONSE:**

**INTERROGATORY NO. 12:** Identify all conditions, requirements, or demands that You allege Plaintiff communicated to Seller or Seller's agents as a precondition to Closing that are not expressly stated as conditions precedent in the Contract.

**RESPONSE:**

**INTERROGATORY NO. 13:** Describe Your role and involvement in the performance of all obligations under the Contract.

**RESPONSE:**

**INTERROGATORY NO. 14:** State the basis for Your contention that Seller satisfied each and every condition precedent, covenant, representation, and warranty under the Contract, and identify the date and manner of satisfaction for each.

**RESPONSE:**

**INTERROGATORY NO. 15:** Identify all insurance policies (including environmental, general liability, and property insurance) You maintained with respect to the Property from May 26, 2023 to the present, including the insurer, policy number, coverage limits, and effective dates.

**RESPONSE:**

**INTERROGATORY NO. 16:** State any knowledge or information You have regarding the presence, disposal, placement, or release in, under, on, or about the Property of any and all environmental contamination, hazardous materials, Hazardous Substances, above-ground and/or underground storage tanks, Tires, waste, garbage, or trash.

**RESPONSE:**

**INTERROGATORY NO. 17:** With respect to the engagement of Whitehead Environmental Solutions, LLC (or any other environmental consultant or engineer retained in connection with the Property), state any instructions You provided related to the assessment, investigation, testing, study, or analysis of the Property or any soil, groundwater, or other environmental media; any information such consultant provided to You; the rationale or technical basis for such assessment, investigation, testing, study, or analysis; and identify any written documents or reports relied upon in determining what assessment, investigation, testing, study, or analysis was conducted.

**RESPONSE:**

**INTERROGATORY NO. 18:** State why no groundwater samples were collected at the Property by Whitehead Environmental.

**RESPONSE:**

**INTERROGATORY NO. 19:** State the basis for Your representation that no Hazardous Substances (as such term is defined in the Agreement) have been incorporated, used, generated, manufactured, stored, or disposed of in, on, under, or about the Property or transferred to or from the Property, and that there are no claims, litigation, administrative or other proceedings, whether actual or threatened, or judgments or orders, relating to the use, generation, manufacture, storage, or disposal of any Hazardous Substances in, on, under, or about the Property.

**RESPONSE:**

**INTERROGATORY NO. 20:** State the basis for Your representation that any and all underground storage tanks previously removed from the Property by Seller were removed in accordance with all applicable laws, ordinances, regulations, and administrative rulings and no underground storage tanks are presently situated in, on, under, or about the Property.

**RESPONSE:**

**INTERROGATORY NO. 21:** State the basis for Your representations or any statements that any and all Tires have been removed from the Property.

**RESPONSE:**

**INTERROGATORY NO. 22:** Identify or state any violations of any Environmental Laws at any time that have occurred in, on, under, or about the Property, and any conditions or circumstances in, on, under, or about the Property that could reasonably be anticipated to result in any remediation, cleanup, removal, or corrective action liability or responsibility under any Environmental Laws.

**RESPONSE:**

**INTERROGATORY NO. 23:** Describe or state any knowledge or information You have regarding any agricultural activities on the Property; the use of any pesticides, insecticides, rodenticides, fungicides, or similar chemicals or substances on the Property; and any grain silos or other agricultural product storage currently or formerly located on the Property, including any sampling, testing, or other analysis of soil, groundwater, or other environmental media in, under, on, or about such facilities, and any agricultural chemicals used on the Property at any time, including organochlorine pesticides (e.g., DDT, chlordane, aldrin, lindane, and carbon tetrachloride), arsenic, and any other pesticides, insecticides, fungicides, rodenticides, and other agricultural chemicals and Hazardous Substances related to agricultural activities.

**RESPONSE:**

**INTERROGATORY NO. 24:** Describe or state any knowledge or information You have regarding the presence of any groundwater wells and any groundwater monitoring wells located or drilled on the Property, including any sampling, testing, or other analysis of the water from such wells, and explain the rationale or basis for the selection of the depth of the groundwater monitoring wells installed on the Property by Whitehead Environmental or by any other party.

**RESPONSE:**

**INTERROGATORY NO. 25:** Describe or state any knowledge or information You have regarding the presence in, under, on, or about the Property of: (a) any household waste or other waste disposed of, placed, buried, or located on the Property, including any paints, solvents, pesticides, automotive fluids, batteries, or asbestos; (b) any electrical equipment or transformers currently or formerly located on the Property, including any polychlorinated biphenyls or other chemicals or Hazardous Substances; (c) any naturally occurring radioactive material or other radioactivity; (d) any pipelines and related facilities currently or formerly located on the Property; and (e) any steel drums currently or formerly located on the Property; including in each case any sampling, testing, or other analysis of soil, groundwater, or other environmental media in, under, on, or about such items or facilities; and describe any testing of samples of soil, groundwater, or other environmental media or wastes at, on, in, under, or about the Property at any time other than what is reported in the January 26 Phase II ESA Report.

**RESPONSE:**

Respectfully submitted,

*/s/ Blake J. Brownshadel*
Blake J. Brownshadel
State Bar No. 24073969
bbrownshadel@cbsattorneys.com
Christopher A. John
State Bar No. 24110053
cjohn@cbsattorneys.com
Emma C. Jenevein
State Bar No. 24136916
ejenevein@cbsattorneys.com
**CALHOUN BHELLA & SECHREST LLP**
325 N. Saint Paul St., Suite 2900
Dallas, Texas 75201
Telephone: (214) 981-9200

**COUNSEL FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2026, the foregoing document was served on all counsel of record via the Court's CM/ECF electronic filing system:

Scott A. Wheatley
swheatley@jw.com
Lee B. Hunt
lhunt@jw.com
Trevor J. Paul
tpaul@jw.com
JACKSON WALKER LLP
777 Main Street, Suite 2100
Fort Worth, Texas 76102

*/s/ Blake J. Brownshadel*
Blake J. Brownshadel

**2026-09-21**

**Declaration of Blake Brownshadel**

**Exhibit E**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **CHALLENGER CRESSON I, LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BILL SANDERS, INDEPENDENT EXECUTOR OF THE ESTATE OF PEARL SMELLEY; CRESSON MOON PROPERTIES, LP; RICHARD DAVID SMELLEY AND AMY ELIZABETH SMELLEY; TAMMY MARIE GRAHAM AND GREGORY SCOTT GRAHAM; AND DEBORAH RUTH DAVIS AND DAVID GLENN DAVIS,**<br><br>**Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Civil Action No. 4:26-CV-00231-P** |

**PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT BILL SANDERS, INDEPENDENT EXECUTOR OF THE ESTATE OF PEARL SMELLEY**

TO: Defendant Bill Sanders, Independent Executor of the Estate of Pearl Smelley, by and through his attorneys of record, Jackson Walker LLP, 777 Main Street, Suite 2100, Fort Worth, Texas 76102.

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Challenger Cresson I, LLC ("Plaintiff" or "Purchaser") propounds the following Interrogatories to Defendant Bill Sanders, Independent Executor of the Estate of Pearl Smelley ("Defendant Sanders") and requests that Defendant Sanders answer each Interrogatory separately, fully, and under oath within thirty (30) days of service.

**DEFINITIONS**

1. "Contract" means the Standard Contract of Sale dated effective May 26, 2023, by and between Defendants (as Seller) and Challenger Realty Group, LLC (as Purchaser), together with all exhibits, schedules, appendices, and addenda thereto.

2. "First Amendment" means the First Amendment to Standard Contract of Sale effective December 4, 2024.

3. "Second Amendment" means the Second Amendment to Standard Contract of Sale effective December 31, 2025.

4. "Property" means that certain approximately 1,674 gross contiguous acres of land with an address of 7700 Old Granbury Road, Cresson, Texas, situated in Hood County, Texas, as more particularly described in the Contract.

5. "January 26 Phase II ESA" means the Limited Phase II Investigation prepared by Whitehead Environmental Solutions, LLC and delivered to Purchaser on or about January 26, 2026.

6. "Seller" or "Defendants" means Bill Sanders, Independent Executor of the Estate of Pearl Smelley; Cresson Moon Properties, LP; Richard David Smelley and Amy Elizabeth Smelley; Tammy Marie Graham and Gregory Scott Graham; and Deborah Ruth Davis and David Glenn Davis, individually and collectively. "Defendant Sanders" means Bill Sanders, Independent Executor of the Estate of Pearl Smelley.

7. "Purchaser" or "Plaintiff" means Challenger Cresson I, LLC, and its predecessors-in-interest, including Challenger Realty Group, LLC.

8. "Document" has the broadest meaning permitted under Rule 34 of the Federal Rules of Civil Procedure and includes electronically stored information ("ESI").

9. "Communication" means any contact or act by which information or knowledge is transmitted or conveyed between two or more persons, including but not limited to statements, conversations, telephone calls, recordings, electronic mail, text messages, and all other forms of verbal or written communication.

10. "Identify" when used with respect to a person means to state the person's full name, last known address, telephone number, and relationship to the parties. When used with respect to a Document means to state the date, author, recipients, subject matter, and present location.

11. "Describe" or "state" means to detail fully and completely the facts or mixed issues of fact and law which concern or relate to the inquiry being made.

12. "Relating to" means, in addition to its customary and usual meaning, discussing, referring to, pertaining to, reflecting, showing, evidencing, or recording.

13. "Person" means a natural person, corporation, partnership, unincorporated association, or any other form of business, governmental, public, or charitable entity.

14. "You" or "Your" means Defendant Sanders, together with all present and former officers, directors, managers, members, employees, agents, representatives, consultants, and any other persons or entities acting on his or the Estate's behalf.

15. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the interrogatory all information that might otherwise be outside its scope.

16. "Environmental Laws" is defined in the Agreement.

17. "Hazardous Substances" is defined in the Agreement.

18. "Tires" is defined in the Agreement.

## INSTRUCTIONS

1. These Interrogatories are propounded pursuant to Rule 33 of the Federal Rules of Civil Procedure. Written responses must be served within thirty (30) days of service.

2. Each Interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath; the person who makes the answers must sign them, and the attorney who objects must sign any objections.

3. In the event any information is withheld on a claim of attorney-client privilege or work product doctrine, provide a privilege log consistent with Federal Rule of Civil Procedure 26(b)(5).

4. These Interrogatories are continuing in nature and require supplemental responses in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

5. Pursuant to Rule 33(d), if the answer to an Interrogatory may be determined by examining business records and the burden of deriving the answer is substantially the same for either party, You may specify the records from which the answer may be derived and afford Plaintiff reasonable opportunity to examine such records.

6. These Interrogatories shall not exceed twenty-five (25) in number, including discrete subparts, in compliance with Rule 33(a)(1) of the Federal Rules of Civil Procedure.

## INTERROGATORIES

**INTERROGATORY NO. 1:** Identify and describe the role of each and every person who has knowledge of any facts relevant to this action or who was involved in the Contract on Your behalf, including the negotiation, drafting, execution, performance, or any amendment thereto.

**RESPONSE:**

**INTERROGATORY NO. 2:** State the complete factual basis for each and every Affirmative Defense asserted by You, including the identity of all persons with knowledge and all Documents supporting each defense.

**RESPONSE:**

**INTERROGATORY NO. 3:** State the complete factual and legal basis for each and every Counterclaim asserted by You, including all damages sought, each act or omission by Plaintiff that You contend constitutes a breach, repudiation, or other basis for relief, and the method of calculation for each category of damages.

**RESPONSE:**

**INTERROGATORY NO. 4:** Identify and describe all Due Diligence Items that were delivered to Plaintiff, the date of delivery for each, and all Due Diligence Items that You failed to deliver, if any, including the reason for non-delivery. Additionally, describe all shut-in payments received by You Relating to the Property.

**RESPONSE:**

**INTERROGATORY NO. 5:** Describe Your efforts to remove Tires, remediate environmental contamination, remove hazardous materials, and remove or decommission any above-ground and underground storage tanks from the Property, including the dates, persons or companies involved, scope of work, and results.

**RESPONSE:**

**INTERROGATORY NO. 6:** Identify all environmental engineers, consultants, or firms retained by You in connection with the Property, and describe the scope, methodology, limitations, and findings of each and every ESA conducted on the Property.

**RESPONSE:**

**INTERROGATORY NO. 7:** State the basis for Your contention that any ESA conducted on the Property satisfies Seller's obligations under the Contract, and describe Your efforts to provide a report prepared by a licensed environmental engineer confirming that no environmental contamination exists on or with respect to the Property.

**RESPONSE:**

**INTERROGATORY NO. 8:** Identify all oil and gas wells, above-ground storage tanks, underground storage tanks, and any other structures or equipment Relating to oil, gas, or hazardous

materials located on the Property, and describe the status, contents, and regulatory compliance history of each.

**RESPONSE:**

**INTERROGATORY NO. 9:** Identify all Communications by You or Your agents to any third parties regarding the potential sale, marketing, listing, or availability of the Property from May 26, 2023 to the present, including the date, manner, content, and identity of each third party.

**RESPONSE:**

**INTERROGATORY NO. 10:** Describe Your readiness, willingness, and ability to close the transaction contemplated by the Contract, including all efforts to establish a closing date and all circumstances affecting Your ability to close, and identify any liens, encumbrances, or title defects affecting the Property.

**RESPONSE:**

**INTERROGATORY NO. 11:** Identify and describe all efforts You have undertaken to mitigate Your alleged damages.

**RESPONSE:**

**INTERROGATORY NO. 12:** Identify all conditions, requirements, or demands that You allege Plaintiff communicated to Seller or Seller's agents as a precondition to Closing that are not expressly stated as conditions precedent in the Contract.

**RESPONSE:**

**INTERROGATORY NO. 13:** Describe Your role and involvement in the performance of all obligations under the Contract.

**RESPONSE:**

**INTERROGATORY NO. 14:** State the basis for Your contention that Seller satisfied each and every condition precedent, covenant, representation, and warranty under the Contract, and identify the date and manner of satisfaction for each.

**RESPONSE:**

**INTERROGATORY NO. 15:** Identify all insurance policies (including environmental, general liability, and property insurance) You maintained with respect to the Property from May 26, 2023 to the present, including the insurer, policy number, coverage limits, and effective dates.

**RESPONSE:**

**INTERROGATORY NO. 16:** State all knowledge or information You have regarding the presence, disposal, placement, or release of any environmental contamination, hazardous materials, Hazardous Substances, Tires, above-ground and/or underground storage tanks, waste, garbage, or trash in, on, under, or about the Property.

**RESPONSE:**

**INTERROGATORY NO. 17:** State any instructions You provided to Whitehead Environmental Solutions, LLC (or any other environmental consultant or engineer retained in connection with the Property) related to the assessment, investigation, testing, study, or analysis of the Property or any soil, groundwater, or other environmental media located in, under, on, or about the Property; any information Whitehead Environmental Solutions, LLC (or any other such consultant or engineer) provided to You related to such assessment, investigation, testing, study, or analysis; the rationale or technical basis for such assessment, investigation, testing, study, or analysis; and any written documents or reports that Whitehead Environmental relied upon for determining what assessment, investigation, testing, study, or analysis was conducted.

**RESPONSE:**

**INTERROGATORY NO. 18:** State why no groundwater samples were collected at the Property by Whitehead Environmental.

**RESPONSE:**

**INTERROGATORY NO. 19:** State the basis for Your representation that no Hazardous Substances (as such term is defined in the Agreement) have been incorporated, used, generated, manufactured, stored, or disposed of in, on, under, or about the Property or transferred to or from the Property, and that there are no claims, litigation, administrative or other proceedings, whether actual or threatened, or judgments or orders, relating to the use, generation, manufacture, storage, or disposal of any Hazardous Substances in, on, under, or about the Property.

**RESPONSE:**

**INTERROGATORY NO. 20:** State the basis for Your representation that any and all underground storage tanks previously removed from the Property by Seller were removed in accordance with all applicable laws, ordinances, regulations, and administrative rulings and no underground storage tanks are presently situated in, on, under, or about the Property.

**RESPONSE:**

**INTERROGATORY NO. 21:** State the basis for Your representations or any statements that any and all Tires have been removed from the Property.

**RESPONSE:**

**INTERROGATORY NO. 22:** Identify or state any violations of any Environmental Laws at any time that have occurred in, on, under, or about the Property, and any conditions or circumstances in, on, under, or about the Property that could reasonably be anticipated to result in any remediation, cleanup, removal, or corrective action liability or responsibility under any Environmental Laws.

**RESPONSE:**

**INTERROGATORY NO. 23:** Describe or state any knowledge or information You have regarding any agricultural activities on the Property and the use of any pesticides, insecticides, rodenticides, fungicides, or similar chemicals or substances on the Property, including organochlorine pesticides (e.g., DDT, chlordane, aldrin, lindane, and carbon tetrachloride), arsenic, and any other agricultural chemicals and Hazardous Substances related to agricultural activities; and any grain silos or other agricultural product storage currently or formerly located on the Property, including any sampling, testing, or other analysis of soil, groundwater, or other environmental media in, under, on, or about such facilities.

**RESPONSE:**

**INTERROGATORY NO. 24:** Describe or state any knowledge or information You have regarding the presence of any groundwater wells and any groundwater monitoring wells located or drilled on the Property, including any sampling, testing, or other analysis of the water from such wells, and explain the rationale or basis for the selection of the depth of any groundwater monitoring wells installed on the Property by Whitehead Environmental or any other party.

**RESPONSE:**

**INTERROGATORY NO. 25:** Describe or state any knowledge or information You have regarding: any household waste or other waste disposed of, placed, buried, or located on the Property (including any paints, solvents, pesticides, automotive fluids, batteries, or asbestos); any electrical equipment or transformers currently or formerly located on the Property (including any sampling, testing, or other analysis of such equipment, any materials or fluids contained in or part of such equipment, and any soil, groundwater, or other environmental media on or around such equipment, for polychlorinated biphenyls or other chemicals or Hazardous Substances); any naturally occurring radioactive material or other radioactivity currently or formerly located on the Property; any pipelines and related facilities currently or formerly located on the Property; any steel drums currently or formerly located on the Property; and any testing of samples of soil, groundwater, or other environmental media or wastes at, on, in, under, or about the Property at any time other than what is reported in the January 26 Phase II ESA Report, in each case including any sampling, testing, or other analysis of soil, groundwater, or other environmental media in, under, on, or about such items or the Property.

**RESPONSE:**

Respectfully submitted,

*/s/ Blake J. Brownshadel*
Blake J. Brownshadel
State Bar No. 24073969
bbrownshadel@cbsattorneys.com
Christopher A. John
State Bar No. 24110053
cjohn@cbsattorneys.com
Emma C. Jenevein
State Bar No. 24136916
ejenevein@cbsattorneys.com
**CALHOUN BHELLA & SECHREST LLP**
325 N. Saint Paul St., Suite 2900
Dallas, Texas 75201
Telephone: (214) 981-9200

**COUNSEL FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2026, the foregoing document was served on all counsel of record via the Court's CM/ECF electronic filing system:

Scott A. Wheatley
swheatley@jw.com
Lee B. Hunt
lhunt@jw.com
Trevor J. Paul
tpaul@jw.com
JACKSON WALKER LLP
777 Main Street, Suite 2100
Fort Worth, Texas 76102

*/s/ Blake J. Brownshadel*
Blake J. Brownshadel