LIBBY//SPARKS
LIBBY · SPARKS · WILLIS · STARNES

JEFFREY T LIBBY
Direct: (214) 390-3264
JLibby@LibbySparks.com

July 1, 2024

Bill Sanders, Independent Executor of
The Estate of Pearl Smelley
804 Flagstone Drive
Burleson, Texas 76028

*Via Email: BSanders@flash.net*

Estate of Pearl Smelley
Attn: Todd Tew
566 North Kimball Avenue, Suite 130
Southlake, Texas 76092

*Via Email: Todd.2@Verizon.net*

Re: Standard Contract of Sale dated effective as of May 26, 2023 (the "**Contract**"), by and between Bill Sanders, Independent Executor of the Estate of Pearl Smelley (the "**Smelley Estate**"), Cresson Moon Properties, LP, a Texas limited partnership ("**CMPLP**"), and the following persons who joined in the Contract solely for the purposes of agreeing to grant, sell and coney their respective portion of the Mineral Estate (as defined in the Contract) to Purchaser as described in the Contract: Richard David Smelley and Amy Elizabeth Smelley (collectively, "**Smelley**"), Tammy Marie Graham and Gregory Scott Graham (collectively, "**Graham**"), and Deborah Ruth Davis and David Glenn Davis (collectively, "**Davis**"). The Smelley Estate, CMPLP, Smelley, Graham, and Davis, are collectively, jointly and severally referred to in the Contract and in this Letter as ("**Seller**"), and Challenger Realty Group, LLC, a Delaware limited liability company, and/or its assigns, ("**Purchaser**"), regarding that certain approximately 1,674 gross contiguous acres situated in the extraterritorial jurisdiction of the City of Cresson, Hood County, Texas, as more particularly described in the Contract (the "**Property**").

Ladies and Gentlemen:

We are starting this letter with the most important message that we wish to convey: our client sincerely wants to work with you to resolve the issues affecting the Property. Purchaser has invested a significant amount of time and a large sum of money conducting its due diligence and Purchaser remains not only very interested in purchasing the Property but also very hopeful that Seller and Purchaser can cooperate with each other in good faith to address the matters outlined below and successfully arrive at the closing table. All defined terms used in this letter that are not defined in this letter are intended to have the meaning ascribed in the Contract.

**Oil and Gas Lease**.

As you know, there is an oil and gas lease of record (the "**Smelley Lease**") that, if active, could potentially affect as much as 120 acres of the surface of the Property – acreage that is situated in the middle of the Property – and could significantly and adversely impact the use and

development of the Property. As part of Purchaser's due diligence activities, Purchaser hired special counsel Kelly Roach, who specializes in oil and gas law, to help assess the mineral estate, as well as a separate petroleum engineer for purposes of assessing the condition and functionality of the wells situated on the Property. Mr. Roach has been requesting documentation from Seller in his attempt to help Purchaser assess Seller's mineral estate and determine, among other things, to what extent the Smelley Lease remains in effect. In response to Mr. Roach's numerous and repeated requests, Seller finally turned over Seller's copies of checks apparently evidencing shut-in royalty payments made to Seller by the lessee under the Smelley Lease (each, a "**Shut-In Royalty Check**"). As you know, a shut-in royalty payment is a payment made by a lessee to a lessor under an oil and gas lease when the lessee stops production from a well, or "shuts it in", and a shut-in royalty clause in an oil and gas lease usually allows for the shut-in royalty payment to replace the regular royalty payments the lessee would normally make while the well is producing and, by making shut-in payments on a well capable of producing oil or gas in paying quantities, typically allows the lessee to maintain the lease.

Purchaser's Request: Purchaser recognizes that the Property has been in the Smelley family for generations and that documents may have been distributed among and/or stored by the various Seller parties. Purchaser requests that the Seller parties perform a thorough search of areas over which each maintains possession and/or control and deliver to Purchaser all of the Due Diligence Items that Seller has in its possession or control which Seller has not yet delivered to Purchaser, including, without limitation, all information relating to (a) the mineral estate, including items and information relating to the Smelley Lease, any and all other oil and gas leases affecting the Property, and any and all wells and related equipment situated on the Property, and (b) any and all pipelines on the Property, including the two gas pipelines about which Purchaser previously inquired which are shown on the survey of the Property as not being located within any recorded easement agreement and traversing from the eastern property line across the Property to the western property line in a northeast to southwest direction. Purchaser also requests Seller to request a Release of Oil and Gas Lease covering the Smelley Lease and all of the lands and depths covered by the Smelley Lease.

**Environmental Matters**.

As you recall, Purchaser's environmental engineer discovered approximately thirty (30) 55-gallon steel drums of oil-based products throughout the Property, as well as one 500-gallon petroleum oil aboveground storage tank located on the western portion of the Property in association with a tank battery located on the Property. It appeared that at least one of those drums was on its side and had leaked a dark-colored liquid out onto the soil and some black oily staining was observed under a few of the 55-gallon steel drums on the western portion of the Property. In its December 15, 2023 letter to Seller, Purchaser requested that Seller immediately advise Purchaser regarding any and all Hazardous Substances that are currently located on the Property or which have been incorporated, used, generated, manufactured, stored, or disposed of in, on, under, or about the Property or transferred to or from the Property. Additionally, Purchaser requested that Seller promptly and properly remove all of the steel drums located on the Property,

as well as all containers that contain any Hazardous Substances. Finally, Purchaser requested that Seller notify Purchaser regarding the date that Seller would remove all of the steel drums and other containers from the Property so that Purchaser could accompany Seller during Seller's removal of such items from the Property. It is our understanding that Seller did not advise Purchaser regarding any Hazardous Substances or notify Purchaser regarding the date that Seller would remove the steel drums and other containers from the Property. However, we understand that Seller has removed certain steel drums from the Land. Section 7(c) of the Contract requires Seller, not less than fifteen (15) days prior to Closing, to remove or cause to be removed from the Property any and all environmental contamination, hazardous materials and above and/or underground storage tanks located in, on or about the Property, and to provide Purchaser with a report prepared by a licensed environmental engineer confirming that no environmental contamination exists on or with respect to the Property in connection therewith.

Purchaser's Request: Purchaser understands that the Property has been subject to oil and gas leases for decades and that there has been a lot of activity on the Property by the oil and gas lessees over the years. Purchaser also recognizes that the approximately 2,000 acres that have been collectively owned by the Smelley family is a lot of land to oversee and maintain. Purchaser requests Seller to cooperate with, and provide current and ongoing information to, Purchaser regarding Seller's prior removal of the steel drums and other containers from the Property and whether Seller engaged an environmental engineer to remove those steel drums and other containers, as well as any and all other activities of Seller in connection with environmental conditions, contamination or presence of hazardous substances in, on, above or below the Property.

**Inspection Period**.

Section 5(a) of the Contract provides that the Inspection Period commences on the Effective Date and continues through the 180th day following the later to occur of (i) the date upon which all of the Tires have been removed from the Land and Seller has notified Purchaser thereof and (ii) the date upon which Seller delivers all of the Due Diligence Items to Purchaser.

Tire Removal. Section 7(d) of the Contract defines Tires as "all tires and parts thereof situated on the Land" and obligates Seller to remove all Tires from the Land within thirty (30) days after the Effective Date. As you recall, after Seller originally notified Purchaser that Seller had removed all the Tires from the Land, Purchaser discovered Tires on the Property and notified Seller of that fact on December 15, 2023. Seller notified Purchaser on or about January 11, 2024 that all Tires had been removed from the Land and Purchaser relied on Seller's notification and continued its due diligence efforts, spending a significant amount of money in the process. However, Purchaser just discovered more Tires situated on the Property (see photos of those Tires attached to this letter as Exhibit "A"). Therefore, as of the date of this letter, Seller still has not removed all the Tires from the Land.

Purchaser requests that Seller contract with one or more companies that can properly inspect the entire Property, identify where all the Tires are located, and then remove all the Tires

from the Property so that all the Tires are fully and finally removed from the Property and none are missed.

Due Diligence Items. Section 4(a) of the Contract requires Seller to deliver or cause to be delivered to Purchaser copies of all of the Due Diligence Items in Seller's possession or control listed on Exhibit "B" to the Contract within ten (10) days following the Effective Date. The list of Due Diligence Items includes, among other items, (i) any and all leases affecting the Property and amendments thereto, ***as well as any other agreement, incident or related document which affects the obligations of Seller or the Property with respect to such leases*** (emphasis added); (ii) any and all additional data, plans, geological and engineering or environmental studies or reports, zoning information, water and sewer studies, topographic maps, existing surveys, platting and other materials (including a copy of Seller's most current existing survey of the Property), ***and all other information and agreements, relating to the Property or any portion thereof which is in the possession of Seller or its agents*** (emphasis added); and (iii) ***any other agreements or documents not referenced above relating to or affecting the Property*** (emphasis added). Seller's copies of the Shut-In Royalty Checks that Seller recently delivered to Purchaser clearly constitute (i) incident or related documents which affect the obligations of Seller or the Property with respect to a lease that affects the Property, (ii) information relating to the Property which was in the possession of Seller or its agents, and (iii) other documents relating to or affecting the Property that are not referenced in the list of Due Diligence Items. Therefore, Seller did not previously deliver to Seller copies of all of the Due Diligence Items in Seller's possession or control.

Purchaser requests, as mentioned above, that the Seller parties diligently search all areas in which each maintains possession and/or control and deliver to Purchaser all of the Due Diligence Items that Seller has in its possession or control which Seller has not yet delivered to Purchaser.

Based on the facts that (a) all of the Tires have not been removed from the Land and (b) Seller did not previously deliver all of the Due Diligence Items to Purchaser, the Inspection Period will not expire on July 9, 2024; the Inspection Period will not expire until the 180th day after (1) all of the Tires have been removed from the Land and Seller has notified Purchaser thereof and (2) Seller has delivered all of the Due Diligence Items to Purchaser. Purchaser again makes demand upon Seller to (A) deliver all of the Due Diligence Items to Purchaser (including, without limitation, all Due Diligence Items relating to the mineral estate, all oil and gas leases to which the Property is subject, and all pipelines on and under the Property), and (B) remove all of the remaining Tires from the Land as soon as possible and notify Purchaser immediately thereafter that all of the remaining Tires on the Land have been removed. In order to avoid further delays in the future, Purchaser again requests that Seller notify Purchaser regarding the date that Seller will remove all of the remaining Tires from the Land so that Purchaser may accompany Seller during Seller's removal of all the remaining Tires from the Land.

Please be advised that this letter is not intended to and does not constitute a waiver of any rights or remedies that Purchaser may have under the Contract. Any potential defaults by Seller now existing or later occurring will not be deemed waived or otherwise accepted by Purchaser.

The description in this letter of the specific rights of Purchaser are not intended to, and will not be deemed to, limit or exclude any other rights to which Purchaser may be or become entitled to under the Contract, at law, in equity, or otherwise. Purchaser reserves all rights and remedies granted under the Contract and available at law or in equity, all of which will be cumulative and may be pursued separately, successively, or concurrently at the sole discretion of Purchaser. No failure to exercise or delay in exercising any rights by Purchaser will operate as a waiver of any rights that Purchaser may have under the Contract.

We request that you indicate Seller's acknowledgment that the Inspection Period will not expire on July 9, 2024 and that the Inspection Period will not expire until the 180th day after the later to occur of (i) the date upon which all of the Tires have been removed from the Land and Seller has notified Purchaser thereof and (ii) the date upon which Seller delivers all of the Due Diligence Items to Purchaser, by returning an executed copy of this letter with the appropriate signatures below, but your returned acknowledgment will not be required to enforce the clear requirements described in Section 5(a) of the Contract.

We want to end this letter the way we began, expressing Purchaser's genuine desire to cooperate with Seller in a good faith effort to address and resolve each of the issues listed above in this letter. Please feel free to contact me at your convenience to discuss the best way(s) to successfully achieve that outcome.

Very truly yours,

Jeffrey T. Libby

*[Seller's Acknowledgment on the Following Page]*

**SELLER'S ACKNOWLEDGEMENT**

**SELLER**:

______________________________
BILL SANDERS, INDEPENDENT EXECUTOR OF THE ESTATE OF PEARL SMELLEY

**SELLER**:

______________________________
RICHARD DAVID SMELLEY

______________________________
AMY ELIZABETH SMELLEY

**SELLER**:

**CRESSON MOON PROPERTIES, LP**,
a Texas limited partnership

By: Cresson Moon Management, LLC,
a Texas limited liability company,
General Partner

By:______________________________
Richard Smelley, Manager

By:______________________________
Tammy Graham, Manager

By:______________________________
Deborah Davis, Manager

**SELLER**:

______________________________
DEBORAH RUTH DAVIS

______________________________
DAVID GLENN DAVIS

**SELLER:**

______________________________
TAMMY MARIE GRAHAM

______________________________
GREGORY SCOTT GRAHAM

/jl

cc: John Contrevo *(via email)*
Charles Gallub *(via email)*
Edwin Esposito *(via email)*
Patricia Herrera *(via email)*
Jake Wilkinson *(via email)*
Cresson Moon Properties, LP
c/o Cresson Moon Management, LLC *(via email: sgd@flash.net)*
Lacy Kimball, Esq. *(via email: info@LacyKimballLaw.com)*
Richard Smelley and Amy Smelley *(via email: Amy.Smelley@icloud.com)*
Deborah Davis and David Davis *(via email: DavidGDavis1@yahoo.com)*
Tammy Graham and Gregory Graham *(via email: Tammy@LocationsPhotography.com)*
Stephen Reich *(via email: stephen.reich@williamstrew.com)*
Kelly Roach, Esq. *(via email)*

**EXHIBIT "A"**

**PHOTOS OF TIRES ON THE LAND**






Exhibit A – Page **2** of **2**