In the United States District Court
for the Northern District of Texas
Fort Worth Division

| | | |
|---|---|---|
| Challenger Cresson I, LLC,<br>Plaintiff, | §<br>§<br>§ | |
| v. | § | No. 4:26-CV-00231-P |
| Bill Sanders, et al.,<br><br>Defendants. | §<br>§<br>§<br>§ | |

---

**Plaintiff's Brief in Support of**
**Plaintiff's Motion for a Preliminary Injunction**

## Table of Contents

Table of Authorities ........ 3

Summary of the Argument ........ 5

Argument ........ 7

I. Preliminary relief is necessary to preserve time-sensitive real property rights. ........ 8

A. Purchaser is likely to succeed on the merits. ........ 8

1. The Contract requires (i) sale to Purchaser, (ii) pre-closing obligations, and (iii) entitlement cooperation. ........ 10

2. Seller has violated and is violating the Contract. ........ 11

i. Seller expressly repudiates the Contract. ........ 11

ii. Seller refuses to perform the pre-closing obligations. ........ 12

iii. Seller obstructs entitlements. ........ 14

3. The Contract has neither expired nor been validly terminated. ........ 16

B. Irreparable harm will occur without preliminary relief. ........ 18

C. The equities favor relief. ........ 22

D. The public interest favors relief. ........ 23

II. Relief should be granted with full evidence as soon as is practicable. ........ 23

A. The Court should rule with an evidentiary hearing if necessary. ........ 23

B. The Court should establish an expedited schedule. ........ 24

Conclusion ........ 25

# Table of Authorities

## Cases

*Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*,
878 F.2d 806 (5th Cir. 1989) .......... 21

*Canal Auth. of Fla. v. Callaway*,
489 F.2d 567 (5th Cir. 1974) .......... 8, 21, 22

*Commerce Park at DFW Freeport v. Mardian Constr. Co.*,
729 F.2d 334 (5th Cir. 1984) .......... 23

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*,
710 F.3d 579 (5th Cir. 2013) .......... 21, 22

*DiGiuseppe v. Lawler*,
269 S.W.3d 588 (Tex. 2008) .......... 18

*Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*,
762 F.2d 464 (5th Cir. 1985) .......... 18

*Fed. Sav. & Loan Ins. Corp. v. Dixon*,
835 F.2d 554 (5th Cir. 1987) .......... 23

*Heil Trailer Int'l Co. v. Kula*,
542 F. App'x 329 (5th Cir. 2013) .......... 23

*Humana, Inc. v. Avram A. Jacobson, M.D., P.A.*,
804 F.2d 1390 (5th Cir. 1986) .......... 18

*Janvey v. Alguire*,
647 F.3d 585 (5th Cir. 2011) .......... 21

*Opulent Life Church v. City of Holly Springs*,
697 F.3d 279 (5th Cir. 2012) .......... 18, 20

*Sharifi v. Steen Auto., LLC*,
370 S.W.3d 126 (Tex. App.—Dallas 2012, no pet.) .......... 8, 15, 17

*Siders v. City of Brandon*,
123 F.4th 293 (5th Cir. 2024) .......... 8

*Texas v. Seatrain Int'l, S.A.*,
518 F.2d 175 (5th Cir. 1975) .......... 8, 18, 22

*TitleMax of Tex., Inc. v. City of Dallas*,
142 F.4th 322 (5th Cir. 2025) ........ 8

*Univ. of Tex. v. Camenisch*,
451 U.S. 390 (1981) ........ 23

**Statutes**

28 U.S.C. § 1657(a) ........ 23

**Rules**

Fed. R. Civ. P. 10(c) ........ 7
Fed. R. Civ. P. 15(a)(2) ........ 7
Fed. R. Civ. P. 15(d) ........ 7
Fed. R. Civ. P. 16(b)(4) ........ 7

**Other Authorities**

11A Charles Alan Wright et al., Federal Practice and Procedure
§ 2949 (3d ed. 2026) ........ 7

## Summary of the Argument

This commercial contract action concerns a ~$32 million dollar contract to sell ~1,674 acres of property for development as a master-planned industrial complex. Plaintiff Challenger is the "Purchaser." Defendants are the "Seller." Purchaser seeks to enforce the bargain: Seller must convey the Property to Purchaser *after* Seller completes required environmental cleanup and certification, and Seller must cooperate with Purchaser's pre-closing development efforts. But Seller demanded closing without performing its initial obligations, obstructed Purchaser's development efforts, and expressly declared the Contract terminated by letter dated October 26, 2026. To preserve its right to buy this unique Property with time-sensitive development rights, Purchaser now must move for an order preliminarily enjoining the Seller as follows:

1. **No Competing Sales.** Seller should be preliminarily enjoined from selling the Property to anyone other than Purchaser, or offering or agreeing to do so.
2. **No Termination or Expiration.** Seller should be preliminarily enjoined from treating the Contract as terminated or expired on any ground, including Seller's October 26, 2026 letter.
3. **No Development Interference.** Seller should be preliminarily enjoined from blocking authorized access, inspections, entitlement, permit, easement, or utility efforts, or withholding cooperation or signatures required by Contract §§ 5(a), 5(e), and 7(e).

Each prerequisite for preliminary relief is satisfied, beginning with Purchaser's strong likelihood of success on the merits. Purchaser will prevail because the clear record establishes Seller's breaches and Purchaser's right to specific performance of the Contract. The requested relief is essentially prohibitory: it restrains competing sales, repudiation, and interference to preserve the agreed transaction. Even to the extent it requires affirmative cooperation, Purchaser's entitlement is clear from Seller's express contractual duties and documented failures to perform.

To repudiate the Contract, Seller posits that it can terminate the Contract because Purchaser defaulted by failing to close on demand. But Seller's closing demand was premature. It is the Seller—not Purchaser—that committed multiple pre-closing defaults, and the Contract cannot be terminated by the first defaulting party. The clearest of several important Seller defaults is this: Section 7(c) required Seller to provide a licensed engineer's report confirming the absence of contamination fifteen days before Closing. Yet Seller doubly violated this requirement by both missing the deadline and giving an insufficient report. The Contract therefore remains fully enforceable, binding Seller to convey the Property to Purchaser and barring a competing sale.

In repudiating the Contract, Seller also now claims a freedom to ignore its pre-closing cooperation obligations. But because the Contract remains in effect, the duty to cooperate with pre-closing entitlement efforts remains. Seller also breached this part of the Contract before repudiation by withholding signatures on groundwater applications and denying access for key inspections. Those acts violated Sections 5(e), 5(a), and 7(e), which require cooperation, preserve inspection rights, and prohibit interference. Purchaser is therefore entitled to preliminary relief protecting its codified right to advance development efforts before closing.

Two distinct irreparable harms are imminent. Land is presumptively unique and subject to specific performance, so a competing sale would irreparably harm Purchaser. And Purchaser's right to acquire the Property would be diminished irreparably if Seller could meanwhile obstruct time-sensitive development efforts. The Contract recognized that time was of the essence for both the ultimate conveyance right and critical pre-closing development efforts, which is why it expressly codified the competing-sale restrictions, specific-performance remedy, and timely cooperation and noninterference duties that Purchaser now seeks to enforce.

Beyond likelihood of success and irreparable harm, the remaining injunction factors strongly favor relief. The equities favor holding Seller to its bargain while preserving Purchaser's unique acquisition and development rights. The public interest favors enforcing contractual obligations and preserving the Court's ability to grant effective relief.

**Argument**

Plaintiff Challenger Cresson I, LLC ("Purchaser") moves for a preliminary injunction against the Defendants ("Seller"). Doc. 34. Because the Seller's repudiation of the Contract is invalid and threatens to harm the Purchaser imminently and irreparably, the Court should issue an order that (1) preliminarily enjoins the Seller from selling the Property to anyone but Purchaser, (2) preliminarily enjoins the Seller from treating the Contract as terminated or expired, and (3) preliminarily enjoins the Seller from blocking Purchaser's pre-closing development work.

Purchaser's proposed Second Amended Complaint ("SAC"), Doc. 33-1, states the facts and is incorporated here by reference. *See* Fed. R. Civ. P. 10(c). At this motion's filing, Purchaser's motion for leave to file the SAC, Doc. 33, remains pending. Leave is warranted for the reasons stated in that motion, including good cause to address Seller's post-deadline obstruction and October 26 repudiation. *See* Fed. R. Civ. P. 16(b)(4), 15(a)(2), (d). The Court may grant leave before or concurrently with preliminary relief; the posture is no reason to delay consideration of this motion. *See* 11A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2949 & nn. 5-6 (3d ed. West 2026) ("a preliminary injunction may be granted upon a motion made before a formal complaint is presented"). Independently, the live complaint already pleads the essential grounds for relief: Seller's material breaches and repudiation, Purchaser's absence of default, and its entitlement to specific performance. Doc. 9 ¶¶ 54–57, 63–73, 86. The injunction protects the rights that have been fully pleaded all along; the SAC adds later events that make protection urgent.

The motion is timely, having been prepared as soon as the need for it crystallized. Until October 26, Seller's position in this Court was that it was "entitled to proceed toward Closing." Defs.' Answer ¶ 79. In August, its counsel was directing Purchaser to schedule a closing. App. 200 / Ex. 12 at 2 / Doc. 35-12 at 2. Seller refused the inspection on October 21 and declared the Contract "no longer in force or effect" on October 26. App. 276 / Ex. 15 at 2 / Doc. 35-15 at 2. Purchaser files this motion four days later.

**I. Preliminary relief is necessary to preserve time-sensitive real property rights.**

Well-established standards apply. A movant should show "(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest." *Siders v. City of Brandon*, 123 F.4th 293, 300 (5th Cir. 2024) (quoting *Anibowei v. Morgan*, 70 F.4th 898, 902 (5th Cir. 2023)). The test requires just a prima facie case, not proof to warrant summary judgment. *See, e.g.*, *TitleMax of Tex., Inc. v. City of Dallas*, 142 F.4th 322, 328–29 (5th Cir. 2025). The requirements are weighed together in a "sliding-scale," *id.* at 328, such that "none of the four prerequisites has a fixed quantitative value," *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975). The aim is "to preserve the court's ability to render a meaningful decision on the merits." *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974). All of those standards are clearly met here.

**A. Purchaser is likely to succeed on the merits.**

The complaint pleads that Seller has breached and is threatening further breaches of the Contract by repudiating its continuing obligations and obstructing Purchaser's contractually authorized development efforts. *See* SAC §§ III.C–E, IV.A–B. Standard contract law requires a

valid contract, the plaintiff's performance or tender, the defendant's breach, and resulting damages. *See, e.g.*, *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 140 (Tex. App.—Dallas 2012).

Purchaser is likely to prevail on its breach-of-contract claims and obtain specific performance. The Contract is valid and binds Seller to convey the Property and perform the agreed pre-closing obligations. Purchaser remains ready, willing, and able to perform, but its obligation to close was conditioned on performance Seller never supplied. Seller breached by failing to complete the required environmental work and reporting, obstructing authorized development efforts, and repudiating the sale. Those breaches have delayed Purchaser's acquisition and impaired its development rights. Purchaser thus seeks and is likely to obtain specific performance to secure both the Property and pre-closing cooperation it bargained for.

The requested injunction serves all of those functions. It holds the Property, the Contract, and the agreed pre-closing process in place until the Court decides the merits. The key Contract provision, Section 11(b), clearly provides for the full panoply of specific-performance remedies that Purchaser seeks to both attain ultimately via final judgment and protect now via preliminary injunction:

> (b) Seller's Default. In the event Seller defaults under this Contract, or any representation or warranty of Seller is not true, or in the event Seller fails to perform any obligation of Seller under this Contract, including without limitation, the obligation to convey good and indefeasible title to the Property to Purchaser on the Closing Date subject only to the Permitted Exceptions in accordance with the provisions of this Contract, then Purchaser may terminate this Contract, in which event the Earnest Money shall be returned to Purchaser, and Seller shall reimburse Purchaser for Purchaser's third party out of pocket costs and expenses incurred by Purchaser in connection with the transaction contemplated herein not to exceed $200,000.00 or Purchaser shall be entitled to seek to enforce specific performance of Seller's obligations hereunder; provided, that if the remedy of specific performance is for any reason not available, Purchaser shall be entitled to pursue the recovery of damages from Seller resulting from such breach. Notwithstanding any provision herein and without limiting Purchaser's rights in the preceding sentence, Purchaser shall be entitled to all rights and remedies available at law or in equity (but excluding lost profits or exemplary or punitive damages) for Seller's breach of any
>
> representation, warranty, indemnity or other agreement which survives the Closing or the termination of this Contract.

App. 16–17 / Ex. 1 at 16–17 / Doc. 35-1 at 16–17 (emphasis added; page break omitted). The time to enforce that is now.

**1. The Contract requires (i) sale to Purchaser, (ii) pre-closing obligations, and (iii) entitlement cooperation.**

The basic bargain is straightforward and established by documents whose authenticity is undisputed. The Contract commits Seller to convey the Property to Purchaser for development as a master-planned industrial complex. App. 1, 7 / Ex. 1 at 1, 7 / Doc. 35-1 at 1, 7 (§§ 1(a), 5(e)). Purchaser acquired the purchaser's interest by assignment. SAC ¶ 1.

This carefully structured contract for a major land acquisition gives equal importance to the ultimate conveyance *and* the pre-closing work necessary to achieve the intended development. Seller promised both to convey the Property on the agreed conditions *and* to perform the cleanup, reporting, and cooperation obligations that make the expressly-envisioned development viable.

Under the Contract's detailed terms, Purchaser's duty to close depends on Seller first satisfying the Contract's express pre-closing requirements. These pre-closing requirements matter not just because they are a precondition of Purchaser's later duties, but because they are highly valuable in and of themselves as part of the overall bargain. Section 7(c) requires that Seller complete environmental cleanup and supply a licensed environmental engineer's report confirming the absence of contamination. Section 7(d) requires that Seller remove all tires and tire parts. App. 11 / Ex. 1 at 11 / Doc. 35-1 at 11. Section 8 makes the listed conditions prerequisites to Purchaser's closing obligation. The Second Amendment reinforces the environmental requirement: "Purchaser's receipt of the final Environmental Report in a form satisfactory to Purchaser is a condition to Purchaser's closing obligations." App. 102 / Ex. 8 at 2 / Doc. 35-8 at 2 (§ 2).

With similar detail, the Contract also protects Purchaser's ability to prepare the Property for development before closing, requiring Seller's cooperation throughout that process. Section 5(e) authorizes Purchaser to pursue entitlements, easements, and utilities before closing and requires Seller's good-faith and best-efforts cooperation, including execution of reasonable or necessary documents within three business days after delivery. App. 7 / Ex. 1 at 7 / Doc. 35-1 at 7. Section 7(e) prohibits opposition or interference. Section 5(a) preserves inspection and assessment rights after the Inspection Period, subject to the specified indemnity and repair obligations. App. 5–6, 11 / Ex. 1 at 5–6, 11 / Doc. 35-1 at 5–6, 11.

**2. Seller has violated and is violating the Contract.**

**i. Seller expressly repudiates the Contract.**

Seller has violated and continues to violate the Contract, most plainly through its express repudiation this week. Seller's October 26 letter declares the Contract "no longer in force or effect, whether by expiration, termination based upon Purchaser's uncured default, or both." App. 276 / Ex. 15 at 2 / Doc. 35-15 at 2. That position repudiates the entire bargain: Seller denies any continuing obligation to convey the Property, complete the outstanding performance, or cooperate with Purchaser's pre-closing development efforts.

This violation comes last chronologically but warrants attention first because it is the most sweeping and imminently injurious. Seller now disclaims the contractual restraints protecting both Purchaser's acquisition and its ongoing development work, threatening to defeat the transaction altogether. Its earlier breaches explain why that repudiation is unjustified: Seller failed to complete the performance required before closing and obstructed the work the Contract expressly authorized. Those failures independently breached the Contract and undermine Seller's attempt to blame Purchaser for the absence of a closing.

**ii. Seller refuses to perform the pre-closing obligations.**

Seller has breached and is breaching the Contract by failing to perform its pre-closing obligations fully and on time. The requirements are express: Section 7(c) requires environmental cleanup and a licensed environmental engineer's report confirming the absence of contamination at least fifteen days before closing, and Section 7(d) requires removal of all tires within thirty days after the Effective Date:

> (c) Not less than fifteen (15) days prior to Closing, Seller shall remove or cause to be removed from the Property any and all environmental contamination, hazardous materials and above and/or underground storage tanks located in, on or about the Property, and shall provide to Purchaser a report prepared by a licensed environmental engineer confirming that no environmental contamination exists on or with respect to the Property in connection therewith.

App. 11 / Ex. 1 at 11 / Doc. 35-1 at 11 (emphasis added). The Second Amendment separately makes receipt of a satisfactory final environmental report a condition of Purchaser's closing obligations. App. 102 / Ex. 8 at 2 / Doc. 35-8 at 2 (§ 2). The agreements, correspondence, photographs, and expert reports establish three distinct failures.

First, Seller violated the Contract by failing to deliver the required environmental report on time. Seller acknowledged in the Second Amendment that the environmental professional was still finalizing the investigation's scope and that neither the investigation nor the report could be completed by December 31, 2025. The extension's stated purpose was to permit full compliance with Section 7(c). App. 101–102 / Ex. 8 at 1–2 / Doc. 35-8 at 1–2. Yet Seller did not deliver Whitehead's report until January 26, 2026—after every asserted closing deadline, rather than fifteen days beforehand. App. 188 / Ex. 10 at 1 / Doc. 35-10 at 1; SAC ¶¶ 36, 39, 59. Even a substantively compliant report delivered then would have been late.

Second, Seller violated the Contract by delivering a report that did not meet its requirements. Whitehead supplied a "Limited Phase II Investigation" focused on soil in the well-pad areas, not the required confirmation that no environmental contamination existed on or with respect to the Property. App. 106–109 / Ex. 9 at 1–4 / Doc. 35-9 at 1–4. The report recorded petroleum-hydrocarbon detections but relied on regulatory screening levels to conclude that no further investigation was warranted; it also restricted reliance to Cresson Moon Property LLC absent consent, and its identified signatories were not licensed environmental engineers. App. 108–109 / Ex. 9 at 3–4 / Doc. 35-9 at 3–4. Purchaser's expert confirms these defects and explains that six borings and nine soil samples inadequately characterized potential sources, the chemical analyses were incomplete, and no groundwater samples were collected. Doc. 20-1 at 9–11; Doc. 23-1 at 6–10. The investigation also identified environmental impacts without fully delineating or remediating them. Doc. 20-1 at 8-11; Doc. 23-1 at 6-10. Purchaser raised the cleanup and reporting deficiencies contemporaneously in its February 12 email. App. 188–189 / Ex. 10 at 1–2 / Doc. 35-10 at 1–2. These failures leave both the cleanup obligation and the required environmental confirmation unsatisfied.

Third, Seller violated the Contract by failing to complete tire removal within the required time. On June 21, 2023, Seller's broker gave written notice "that all tires have been removed from the property." App. 76 / Ex. 3 at 1 / Doc. 35-3 at 1. Purchaser's December 15, 2023 letter identified tires still present at several locations and demanded removal. App. 78 / Ex. 4 at 2 / Doc. 35-4 at 2. On January 11, 2024, the broker again gave written notice that "the tires have been finally cleaned up on this property." App. 82–83 / Ex. 5 at 1–2 / Doc. 35-5 at 1–2. Purchaser's July 1, 2024 letter then reported additional tires and attached photographs. App. 86–87, 91–92 / Ex. 6 at 3–4, 8–9 /

Doc. 35-6 at 3–4, 8–9. Those repeated discoveries establish that removal remained incomplete long after the deadline. App. 11 / Ex. 1 at 11 / Doc. 35-1 at 11; SAC ¶¶ 32–33.

The October 26 repudiation compounds these defaults. Seller previously acknowledged the environmental requirements and purported to satisfy them; it now declares the Contract “no longer in force or effect.” App. 101–102 / Ex. 8 at 1–2 / Doc. 35-8 at 1–2; App. 276 / Ex. 15 at 2 / Doc. 35-15 at 2. That position disclaims any obligation to cure the deficient report or complete the outstanding cleanup, turning inadequate performance into an express refusal to provide anything further.

**iii. Seller obstructs entitlements.**

Seller breached and is breaching the Contract by obstructing Purchaser’s entitlement efforts and inspection access. The governing duties are express: Section 5(e) requires cooperation and timely signatures, Section 5(a) preserves inspection rights, and Section 7(e) prohibits interference. App. 5–7, 11 / Ex. 1 at 5–7, 11 / Doc. 35-1 at 5–7, 11. The correspondence and pleaded facts establish three distinct violations of those duties, independent of Seller’s environmental defaults.

First, Seller violated the Contract by instructing Purchaser to take no action except to schedule closing. In August 2026, Seller’s counsel directed Purchaser to “take no action” concerning the Property unless that action was “scheduling a closing date.” App. 200 / Ex. 12 at 2 / Doc. 35-12 at 2 (quoting Seller’s counsel’s August 17 response); SAC ¶ 46. That categorical restriction directly contradicted Purchaser’s express right to pursue pre-closing entitlements and Seller’s promise not to oppose or interfere with those efforts. App. 7, 11 / Ex. 1 at 7, 11 / Doc. 35-1 at 7, 11 (§§ 5(e), 7(e)).

Second, Seller violated the Contract by refusing to execute the requested groundwater applications. Purchaser delivered twenty-two well-permit applications and one operating-permit application and demanded execution within Section 5(e)’s three-business-day period. App. 199–

201 / Ex. 12 at 1–3 / Doc. 35-12 at 1–3. Cresson Moon declined to provide the signatures, disputed any present duty to act, and offered only to "promptly consider execution" of an appropriate document after additional prerequisites were met. App. 270–271 / Ex. 13 at 1–2 / Doc. 35-13 at 1–2. That response supplied neither the requested signatures nor a commitment to provide them within the contractual deadline. Seller did not execute the applications within three business days or thereafter. SAC ¶ 55.

Third, Seller violated the Contract by blocking Purchaser's property access. Purchaser's October 7 letter renewed its unanswered September 30 request for a non-invasive water-planning inspection by Jarrod Reynolds, P.E., of Core Management Group. The inspection concerned geology, topography, creeks, impoundments, vegetation, potential water-storage locations, and potential waters of the United States. App. 273 / Ex. 14 at 2 / Doc. 35-14 at 2. Section 5(a) expressly preserves inspection and assessment rights after the Inspection Period, subject to its indemnity and repair obligations. App. 6 / Ex. 1 at 6 / Doc. 35-1 at 6. Purchaser offered to coordinate a mutually workable date and reasonable access logistics, yet Seller denied access and prevented the work. App. 273 / Ex. 14 at 2 / Doc. 35-14 at 2; SAC ¶ 51.

Each breach is material because the withheld cooperation is essential to the transaction. Purchaser's receipt of "all of the Entitlements . . . required by Purchaser" is an express condition precedent to its duty to close. App. 12 / Ex. 1 at 12 / Doc. 35-1 at 12 (§ 8(a)). Seller's instructions, withheld signatures, and denied access obstructed the work needed to obtain those approvals, impaired development opportunities, and diminished the value of Purchaser's bargain. SAC ¶¶ 46–57. Texas law recognizes a duty to cooperate when cooperation is necessary to contractual performance; here, the Contract expressly requires it. *Sharifi*, 370 S.W.3d at 146; App. 7, 11 / Ex.

1 at 7, 11 / Doc. 35-1 at 7, 11 (§§ 5(e), 7(e)). Seller cannot demand closing while blocking the approvals on which closing depends.

Repudiation likewise escalates the obstruction of Purchaser's development rights. Cresson Moon's August response at least offered to "promptly consider execution" of appropriate permitting documents. App. 271 / Ex. 13 at 2 / Doc. 35-13 at 2. By asserting expiration and termination on October 26, Seller abandoned even that conditional prospect of cooperation and claimed freedom from the access, signature, and noninterference duties altogether. App. 275–276 / Ex. 15 at 1–2 / Doc. 35-15 at 1–2. Purchaser thus confronts a categorical rejection of the continuing assistance its time-sensitive development efforts require.

**3. The Contract has neither expired nor been validly terminated.**

Seller premises termination on Purchaser's refusal to close, but its demand preceded the performance necessary to make closing due. Seller had already committed multiple pre-closing defaults, most plainly by failing to deliver a compliant environmental report within Section 7(c)'s deadline. Its eventual delivery was both late and substantively deficient. Those failures defeated its asserted right to terminate and left Purchaser entitled to enforce the promised conveyance and related obligations.

The Contract expressly limits Seller's termination right in Section 11(a). It requires a Purchaser default remaining uncured for ten days after written notice, and it permits termination only "provided that Seller has not defaulted in the performance of any of Seller's obligations hereunder":

> **11.** **Default and Remedies.**
>
> (a) Purchaser's Default. In the event Purchaser defaults under this Contract or fails to perform any obligation of Purchaser under this Contract, and such default and failure shall remain uncured for a period of ten (10) days following written notice thereof from Seller to Purchaser, provided that Seller has not defaulted in the performance of any of Seller's obligations hereunder, Seller may, as Seller's sole and exclusive remedy, terminate this Contract by written notice to Purchaser at any time before such default by Purchaser is cured, in which event, Seller shall be entitled to retain the portion of the Earnest Money which has then been deposited by Purchaser as liquidated damages for Purchaser's default and Purchaser shall thereby be released from further obligations under this Contract. Such amount is agreed upon by and between Seller and Purchaser

App. 16 / Ex. 1 at 16 / Doc. 35-1 at 16 (emphasis added). Neither requirement is satisfied. Purchaser did not commit any default because the closing conditions remained unsatisfied, and Seller's own outstanding defaults independently barred termination. App. 12 / Ex. 1 at 12 / Doc. 35-1 at 12 (§ 8); App. 102 / Ex. 8 at 2 / Doc. 35-8 at 2 (§ 2). A notice demanding closing could not eliminate either contractual restriction.

Indeed, Seller's own pleadings and conduct confirm that the Contract survived the January 2026 events. *After* the date it now characterizes as expiration, Seller pleaded that it was "entitled to proceed toward Closing" and denied having "expressed any intent to rescind the Contract." Defs.' Answer ¶ 79. In August 2026, its counsel likewise instructed Purchaser to take no action except "scheduling a closing date." App. 200 / Ex. 12 at 2 / Doc. 35-12 at 2. Those positions treated the sale obligation as continuing, contradicting the claim that it had already disappeared in January.

Texas law reinforces the distinction between a binding agreement and a performance obligation that has not yet matured. A condition precedent must occur before the corresponding performance becomes due, and a party cannot rely on the failure of a condition that its own conduct prevented. *See, e.g.*, *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 143–46 (Tex. App.—Dallas 2012). Here, the unsatisfied environmental conditions precluded Seller from treating Purchaser's failure to close as a default. Its obstruction of required entitlement work further defeats its attempt to blame Purchaser for the absence of a closing.

Nor does the Contract itself make the passage of a Closing Date cause termination. When closing conditions remain unsatisfied, Section 8 gives Purchaser the right, "but not the obligation," to terminate and expressly preserves its remedies for Seller's default under Section 11(b):

> If all of the above described conditions are not fully satisfied or waived by Purchaser in the manner specified above as of the Closing Date, Purchaser shall have the right, but not the obligation, to terminate this Contract by delivering notice to Seller, in which event neither Party shall have any further rights, duties or obligations hereunder and the Earnest Money (less the Independent Contract Consideration) shall be immediately returned to Purchaser in full; provided, however,
>
> that nothing contained in this Section 8 is intended to be or shall be construed as a limitation of any remedies available to Purchaser pursuant to Section 11(b) hereof if Seller defaults under this Contract.

App. 12–13 / Ex. 1 at 12–13 / Doc. 35-1 at 12–13 (emphasis added; page break omitted). The First Amendment's outside-date provision, as subsequently modified, fixed a closing deadline; it did not declare the Contract automatically extinguished or erase Purchaser's remedies for nonperformance. App. 95 / Ex. 7 at 3 / Doc. 35-7 at 3; App. 101–102 / Ex. 8 at 1–2 / Doc. 35-8 at 1–2. Section 11(b)'s express specific-performance remedy presupposes precisely this circumstance: Seller has breached, but the Contract remains enforceable so Purchaser can compel the promised performance. App. 16 / Ex. 1 at 16 / Doc. 35-1 at 16.

Here, Seller's repudiation operates to excuse an otherwise futile tender, *see, e.g.*, *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 594–95, 599–600 (Tex. 2008), but Purchaser has been, remains, and will remain ready, willing, and financially able to perform every obligation the Contract requires of it. SAC ¶ 63. Purchaser seeks specific performance of the Contract in full and is committed to completing the transaction on its agreed terms. That commitment will continue through consummation of the transaction. Preliminary relief preserves the Property and development rights so that the Court can enforce that bargain.

**B. Irreparable harm will occur without preliminary relief.**

This part of the test asks whether Purchaser faces a substantial threat of imminent injury that money damages could not adequately repair. The movant need not establish that injury is inevitable; it must just show a significant threat of harm that monetary relief would not fully remedy. *See Humana, Inc. v. Avram A. Jacobson, M.D., P.A.*, 804 F.2d 1390, 1394 (5th Cir. 1986).

Contracts for the sale of land are the paradigm case for specific performance because the deprivation of an interest in unique real property constitutes irreparable harm. *See, e.g.*, *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 297 (5th Cir. 2012). An injury is also irreparable when monetary remedies cannot fully undo it. *See Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472–73 (5th Cir. 1985). Thus, economic loss can support relief where, as here, the resulting damages are not susceptible of specific proof. *See Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975). Preliminary relief protects against those injuries by preserving the status quo pending adjudication. *Seatrain*, 518 F.2d at 178.

Purchaser's alternative damages claim concedes nothing. The Contract makes damages available only "if the remedy of specific performance is for any reason not available." App. 16 / Ex. 1 at 16 / Doc. 35-1 at 16 (§ 11(b)). The parties agreed that money is the fallback, not the equivalent.

Under this test, Purchaser's requested relief preserves the true status quo ante. The parties' last peaceable relationship had both sides treating the Contract as in force and respecting its pre-closing obligations. The Second Amendment records that shared understanding: the parties extended closing to allow Seller to comply with Section 7(c), made receipt of a satisfactory final environmental report a closing condition, and reaffirmed the Contract. App. 101–102 / Ex. 8 at 1–2 / Doc. 35-8 at 1–2. The requested injunction preserves that relationship by protecting the agreed sale and the work the Contract authorizes before closing.

Without relief, two distinct forms of irreparable harm are imminent. First, remarketing and repudiation threaten to place the Property beyond Purchaser's reach. On February 13, 2026, listing broker Stephen Reich told another broker that the Property was "going to be coming back on the market," asked whether his client was interested, and supplied a marketing packet. That email was forwarded to Purchaser's representative on February 25. App. 190, 192–193 / Ex. 11 at 1, 3–4 / Doc. 35-11 at 1, 3–4. Seller now expressly maintains that the Contract is "no longer in force or effect." App. 276 / Ex. 15 at 2 / Doc. 35-15 at 2. Having solicited another buyer before that unequivocal repudiation, Seller now claims freedom from the very contractual restraints that protect Purchaser, making the threat of a competing sale more acute. Together, the solicitation and repudiation imminently threaten the conveyance Purchaser seeks to enforce.

The Property's unique combination of scale, location, and access makes preserving the promised conveyance especially urgent. The Property comprises approximately 1,674 contiguous acres. App. 1 / Ex. 1 at 1 / Doc. 35-1 at 1 (§ 1(a)). The broker's own marketing packet calls the tract "hard to find" and emphasizes its 1,300 feet of road frontage, access via Highway 377 and the new loop, and more than two miles of rail frontage. App. 193 / Ex. 11 at 4 / Doc. 35-11 at 4. Those advertised features reinforce the particular development value of this assemblage. Purchaser alleges that no comparable substitute exists. SAC ¶ 94. Its availability must be preserved while the Court adjudicates Purchaser's right to acquire it.

Second, and independently, Seller's obstruction threatens development opportunities that cannot simply await judgment. Access and inspections are necessary to advance unresolved work. *See* Doc. 20-1 at 10–11; Doc. 23-1 at 6–10. The permitting timetable also requires timely cooperation. *See id.* And thus the bargain includes more than acreage: Section 1(b) expressly includes Seller's interests in water capacity, permits, governmental approvals, utility

commitments, and other development rights. App. 2 / Ex. 1 at 2 / Doc. 35-1 at 2 (§ 1(b)). Delay that impairs those rights threatens the substance of the promised acquisition.

Purchaser's August 19 demand warned Seller of an August 27 hearing on proposed groundwater-rule changes and explained that filing beforehand "may preserve claims" to the existing allocation. App. 200 / Ex. 12 at 2 / Doc. 35-12 at 2. Seller nevertheless withheld the requested signatures. App. 270–271 / Ex. 13 at 1–2 / Doc. 35-13 at 1–2. Those withheld signatures and the subsequent denial of inspection access have impaired Purchaser's development opportunities, and continued obstruction threatens further losses that neither a later conveyance nor money damages can fully repair. SAC ¶¶ 51, 55–57.

The Fifth Circuit's decisions support protecting both the Property and the remedy sought. In *Opulent Life Church v. City of Holly Springs,* 697 F.3d 279 (5th Cir. 2012), the threatened loss of a lease independently supported irreparable harm because "[t]he deprivation of an interest in real property constitutes irreparable harm." *Id.* at 297. Here, the broker's solicitation and Seller's express declaration that the Contract is no longer effective threaten Purchaser's contractual right to acquire this particular property. App. 190, 193 / Ex. 11 at 1, 4 / Doc. 35-11 at 1, 4; App. 275–276 / Ex. 15 at 1–2 / Doc. 35-15 at 1–2; SAC ¶ 94.

*Janvey v. Alguire*, 647 F.3d 585 (5th Cir. 2011), likewise upheld interim protection of the specific assets in dispute because their dissipation would impair the court's ability to grant effective equitable relief. *Id.* at 600–01. The requested restraint serves that function: it preserves the subject of the litigation so that a judgment requiring conveyance can remain effective.

The development injuries present a separate reason damages are inadequate. In *Allied Marketing Group, Inc. v. CDL Marketing, Inc.*, 878 F.2d 806 (5th Cir. 1989), the Fifth Circuit recognized irreparable harm where the nature of the economic rights made valuation of the loss

"especially difficult or speculative." *Id.* at 810 n.1. The difficulty here concerns valuing opportunities that continued obstruction threatens to extinguish. A later award cannot reopen a regulatory window, and the availability of some economic compensation does not establish that the remedy is adequate. *See Janvey*, 647 F.3d at 600.

**C. The equities favor relief.**

This part of the test asks whether the threatened injury to Purchaser if relief is denied outweighs the harm the injunction may cause Seller. *See, e.g.*, *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 572–73 (5th Cir. 1974). The weighing is comparative: where the movant faces irreparable injury but the opposing party's losses are compensable in money, those monetary harms may not outweigh the threatened irreparable injury. *See, e.g.*, *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013).

The balance favors Purchaser here because preserving the parties' existing contractual relationship requires Seller to honor its agreed restrictions and cooperation obligations while the Court decides the merits. The purpose of preliminary relief "is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits," a purpose ordinarily "furthered by preservation of the status quo." *Canal Auth.*, 489 F.2d at 576.

Here, any claimed financial burden from delaying a competing sale must be weighed against the threatened loss of Purchaser's unique acquisition and remaining development opportunities. The competing-sale concern is concrete: the listing broker solicited another buyer and circulated a packet advertising this tract's unusual scale and road and rail access. App. 190, 192–193 / Ex. 11 at 1, 3–4 / Doc. 35-11 at 1, 3–4. Section 7(b) already restricts competing purchase contracts and options, subject to its stated exceptions. App. 11 / Ex. 1 at 11 / Doc. 35-1 at 11.

Requiring Seller to honor its contractual access and cooperation obligations imposes no unreasonable burden here. Purchaser's access request was modest: a non-invasive inspection on a

mutually workable date, with reasonable access logistics to be coordinated through counsel. App. 273 / Ex. 14 at 2 / Doc. 35-14 at 2. Its groundwater demand likewise sought signatures on identified applications and explained the consequences of delay. App. 199–201 / Ex. 12 at 1–3 / Doc. 35-12 at 1–3. Seller retains title pending adjudication, and the requested relief does not compel immediate conveyance. The balance therefore favors preserving Purchaser's ability to obtain meaningful performance over allowing Seller to defeat that performance while the case is pending.

### D. The public interest favors relief.

This part of the test asks whether granting the injunction will disserve the public interest. *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 572–73 (5th Cir. 1974). It will not because "the public is served when the law is followed." *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013). Because the requested injunction governs private conduct in a single real-estate transaction and leaves applicable regulatory requirements intact, no countervailing public interest weighs against relief. Preserving the status quo also protects the Court's ability to render a meaningful decision on the merits. *See Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 178 (5th Cir. 1975); *Canal Auth.*, 489 F.2d at 576.

## II. Relief should be granted with full evidence as soon as is practicable.

### A. The Court should rule with an evidentiary hearing if necessary.

The Court should grant relief on the written record if the material facts showing the injunction's need are undisputed, which is an established decisional route, *see, e.g., Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558–59 (5th Cir. 1987). If instead the motion's resolution turns on one or more disputed questions of material fact, Purchaser requests an evidentiary hearing. This too is a well-established mode of decision whenever genuine factual disputes exist. *See, e.g.*, *Heil Trailer Intern. Co. v. Kula*, 542 F. App'x 329, 334 (5th Cir. 2013); *Commerce Park at DFW Freeport v. Mardian Constr. Co.*, 729 F.2d 334, 341–42 (5th Cir. 1984). Purchaser is prepared to

present evidence at a hearing concerning all material aspects of the motion, including Seller's outstanding performance and obstruction; the urgency of the threatened development injuries, and Seller's readiness, willingness, and ability to close. Those disputes should be resolved before a competing sale or lost development opportunities impair the ability to afford effective relief.

### B. The Court should establish an expedited schedule.

Purchaser respectfully requests that the Court establish an expedited schedule for briefing and disposition of this motion, including any evidentiary hearing the Court deems necessary. Congress expressly directs courts to "expedite the consideration of any action for temporary or preliminary injunctive relief," 28 U.S.C. § 1657(a), because "haste . . . is often necessary" to preserve the status quo appropriately. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). That urgency is present here. Seller's broker has solicited a competing purchaser once already, the development and permitting opportunities protected by the Contract remain time-sensitive, and Seller's most recent act of expressly repudiating the Contract—announced only this Monday—creates immediate uncertainty about what Seller intends to do next, including whether and when it may attempt to convey the Property to a third party.

Purchaser does not seek a temporary restraining order at this time. It instead requests the earliest practicable disposition of this motion, both to protect its contractual and property interests and to avoid the need for more immediate emergency procedures should a competing sale or other irreparable injury become imminent.

## Conclusion

The motion's request for a preliminary injunction should be granted. *See* Doc. 34. As part of this disposition, Purchaser further requests that the Court (1) grant its pending motion for leave to file the Second Amended Complaint, Doc. 33, before or concurrently with granting preliminary relief; (2) establish an expedited schedule for briefing and disposition of this motion; and (3) decide the motion on the written record or, if resolution requires determining disputed material facts, conduct an evidentiary hearing at the earliest practicable date.

Respectfully submitted,

Chad Flores
Texas Bar No. 24059759
chad@chadflores.law
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
P: (713) 364-6640
F: (832) 645-2496

Michael A. Cancienne
Texas Bar No. 24055256
mcancienne@jlcfirm.com
Joseph "Jeb" Golinkin
Texas Bar No. 24087596
jgolinkin@jlcfirm.com
Carolina Herrera
Texas Bar No. 24126398
cherrera@jlcfirm.com
Jordan, Lynch & Cancienne
1980 Post Oak Boulevard, Suite 2300
Houston, Texas 77056
P: (713) 955-4020

Counsel for Plaintiff